## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TROY D. GERMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-_____19-751-F_____ |
| | ) |
| BILLY D. "RUSTY" RHOADES, | ) |
| individually; | ) |
| | ) |
| MICHAEL HARRELL, individually; | ) |
| | ) |
| -and- | ) |
| | ) |
| BRIAN ORR, individually, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

**COMES NOW** Plaintiff Troy D. German and, for his causes of action against

Defendants Billy D. "Rusty" Rhoades, individually, Michael Harrell, individually, and

Brian Orr, individually, alleges and states as follows:

### The Parties

1.      Plaintiff Troy D. German ("CPT German") is and at all relevant times has

been a resident of the Western District of Oklahoma. In June 2019, German retired from

the Oklahoma Highway Patrol ("OHP") at the rank of Captain.

2.      Defendant Billy D. "Rusty" Rhoades is and at all relevant times has been a

resident of the Western District of Oklahoma. Defendant Rhoades is currently employed

as the Commissioner of the Oklahoma Department of Public Safety, a position appointed by the Governor of the State of Oklahoma.

3.     Defendant Michael Harrell is and at all relevant times has been a resident of the Western District of Oklahoma. Defendant Harrell is currently employed as the Chief of the OHP.

4.     Defendant Brian Orr is and at all relevant times has been a resident of the Western District of Oklahoma. Orr is currently employed as a Captain in the OHP.

Jurisdiction and Venue

5.     The Court has subject matter jurisdiction over all of CPT German's federal-law claims pursuant to 28 U.S.C. § 1331, as each of those claims arise under federal law, *i.e.* the United States Constitution and 42 U.S.C. § 1983.

6.     The Court has personal jurisdiction over the Defendants because they are all citizens and residents of the State of Oklahoma.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because all or part of CPT German's causes of action arose within the Western District of Oklahoma.

Factual Allegations

8.     In 1998, CPT German graduated from the OHP Academy and thereafter began his job duties and responsibilities in the OHP at the rank of Trooper.

9.     CPT German performed his job duties and responsibilities in a competent and satisfactory manner, and he subsequently promoted to the rank of Lieutenant in 2007.

10.     CPT German performed his job duties and responsibilities as a Lieutenant in a competent and satisfactory manner, and he subsequently promoted to the rank of Captain in 2017.

11.     In addition to his ordinary job duties and responsibilities, CPT German became the Incident Commander/Team Leader of the Oklahoma state-wide Incident Management Team in 2010.

12.     The Incident Management Team was and is a multi-jurisdictional, multi-agency incident response team that responds to major emergency incidents, such as natural disasters, railway accidents, and more.

13.     In addition to serving as the Incident Commander/Team Leader of the state-wide Incident Management Team, CPT German also served as the Program Manager for the OHP's internal Incident Management Team.

14.     Through his education, training, and experience related to the state-wide and OHP Incident Management Team, CPT German became highly skilled and qualified in the field of incident management.

15.     As a result of his high level of skills and qualifications in the field of incident management, CPT German developed an outstanding reputation state- and nation-wide in the field of incident management.

16.     For many years, CPT German has observed inequities and questionable conduct by the OHP administration in a number of different areas, including in the use of state funds as well as in the promotional process.

17.     CPT German raised these issues internally, both informally and formally, as well as externally, in an effort to root out corruption and unethical behavior in the OHP.

18.     In 2018, the OHP advertised three vacancies at the rank of Captain for Troop A, Troop R, and Troop SO.

19.     In July 2018, the OHP began testing for these three vacancies.

20.     The OHP promotional process to the rank of Captain included a written test, an oral promotional board, and a command assessment. The oral promotional board consisted of various members of the OHP.

21.     Major Garrett Vowell was assigned as the Chair for the Troop A, Troop R, and Troop SO promotional boards. Vowell's duties as Chair required him to assemble the questions for all three promotional boards.

22.     Defendant Rhoades assisted in drafting the questions for the Troop R promotional board interview.

23.     Vowell confirmed with Defendant Rhoades and Defendant Harrell the exact questions that would be on the promotional boards.

24.     Defendant Rhoades received pressure from external sources in the Oklahoma Legislature to promote Defendant Orr, to the position and rank of Captain. This included a letter of recommendation for Defendant Orr from Senator Roger Thompson.

25.     On or before July 16, 2018, Vowell delivered the Troop A promotional board questions to Defendant Harrell.

26.     On or around July 17, 2018, Defendant Rhoades, in the presence of Defendant Harrell, made a telephone call to Defendant Orr. When he finished his

4

conversation with Defendant Orr, Defendant Rhoades handed the phone to Defendant Harrell.

27.     During this phone call on July 17, 2018, Defendant Harrell provided Defendant Orr with the four specific questions that would be on the upcoming promotional board for Troop A. Defendant Harrell even provided the questions in the exact order they would be asked during the promotional board oral interview.

28.     The Troop A promotional board oral interviews were set for July 18, 2018.

29.     Defendant Harrell provided Defendant Orr with these four questions in the presence of, with the knowledge of, and at the direction of Defendant Rhoades.

30.     Defendant Harrell told Defendant Orr the questions would be as follows:

     a.  Obligations of a Captain when a trooper is killed in the line of duty;

     b.  Discussion of a Signal 1 plan;

     c.  Levels of discipline; and

     d.  Give a two-minute traffic safety talk.

31.     During this phone call on July 17, 2018, Defendant Harrell told Defendant Orr that he would need to know what to do if the Chief assigned him as the Incident Commander following a trooper's death in the line-of-duty.

32.     During this phone call on July 17, 2018, Defendant Harrell told Orr that he needed to focus on the levels of discipline and the five (5) action levels contained in the OHP Operations Manual.

33.     During this phone call on July 17, 2018, Defendant Harrell told Orr that he should "take a deep breath" before giving his two-minute traffic safety speech.

34.     Question number 1 on the promotional board that took place on July 18, 2018, was as follows:

"You are the Troop Commander of Troop A when you get a phone call from one of your supervisors that a Trooper was killed in the line of duty. Per OHP policy 02.24.00, the Chief of Patrol assigns you as the Incident Commander. Explain to the board what your role is and give a summary of your duties as the Incident Commander."

35.     Question number 2 on the promotional board that took place on July 18, 2018, was as follows:

36.     "Per OHP policy 06.02.00, the Troop Commander shall take steps to ensure all Patrol personnel provide a quick and efficient response to an incident for the Signal 1 plan. Explain what the Signal 1 plan is and what the steps include."

37.     Question number 3 on the promotional board that took place on July 18, 2018, was as follows:

OHP defines discipline as informal or formal action to correct infractions or statute, rule, policy, practice or procedure regarding work performance or behavior. Per OHP policy 01.31.00, explain to the board what the Levels of Action are under the Disciplinary Matrix.

38.     The "benchmarks" for the answer to this question were the five (5) levels of discipline.

39.     Question number 4 on the promotional board that took place on July 18, 2018, was as follows:

The Troop Commander of Troop A is responsible for the largest troop in the state. You will be participating in troop meetings, conferences, seminars, and delivering safety talks to various groups as stated in OHP policy 02.10.00. At this time, take 30 seconds to gather your thoughts and deliver to the board approximately a two minute traffic safety speech regarding Troop A.

40.     After Defendant Orr received the promotional board oral interview questions from Defendant Harrell, he contacted CPT German. CPT German had been helping Defendant Orr study for the upcoming promotional boards.

41.     Defendant Orr told CPT German that "Number 3" had contacted him and provided him with the upcoming questions on the Troop A promotional board oral interview. "Number 3" is a direct and specific reference to Defendant Harrell who, as Chief of the OHP, is assigned Badge Number 3.

42.     CPT German immediately developed a concern that Defendant Harrell and Defendant Orr had committed a violation of state law and Patrol policies, in addition to an egregious violation of OHP ethics.

43.     Later on that same date (July 17, 2018), CPT German met Defendant Orr at Bricktown Brewery in Shawnee, Oklahoma. CPT German recorded a conversation with Defendant Orr in which Defendant Orr again detailed his conversation with Defendant Harrell as described above.

44.     Defendant Orr showed CPT German the handwritten notes he "scribbled down" while speaking with Defendant Harrell.

45.     On this same date, CPT German informed members of the General Staff of the OHP, two ministers, and an elder from his church about the violations of state law, Patrol policies, and Patrol ethics. CPT German requested that the ministers and the elder pray for him over this situation, because CPT German was well aware of the Patrol's penchant for retaliation against whistleblowers.

46.     After the Troop A promotional board oral interview that took place on July 18, 2018, CPT German confirmed that the questions Defendant Harrell provided to Defendant Orr were the actual questions used during the promotional board oral interview.

47.     Following the promotional board oral interview, members of the Promotional Board questioned how Defendant Orr was able to perform as well as he did during his presentation.

48.     Defendant Orr also informed CPT German of information that implicated Defendant Rhoades in the cheating scheme and violations of state law, Patrol policies, and Patrol ethics.

49.     On August 2, 2018, CPT German informed OSBI Agent in Charge Stan Florence about the cheating scheme and violations of state law, Patrol policies, and Patrol ethics described herein. Florence recommended that CPT German bring the issue to the attention of Defendant Rhoades, thereby allowing Rhoades the opportunity to correct the wrongdoings.

50.     On August 11, 2018, CPT German, upon the advice of OSBI SAC Florence, met with Defendant Rhoades in Defendant Rhoades' office. CPT German informed Defendant Rhoades about the cheating scheme and violations of state law, Patrol policies, and Patrol ethics described herein. CPT German told Defendant Rhoades that he wanted to affect positive changes within the agency and that he hoped Defendant Rhoades would do what was right and begin an investigation.

51.     CPT German documented this meeting on his state time sheet and had requested his Major to allow him time to attend the meeting.

52.     At the end of this meeting on August 11, 2018, Defendant Rhoades asked CPT German if he (German) would like him (Rhoades) to write a letter of recommendation for German's application for the position of Director of the Office of Emergency Management.

53.     CPT German agreed but did not use Defendant Rhoades as a reference on his application for the position of Director of the Office of Emergency Management.

54.     Later in the evening of August 11, 2018, CPT German advised at least one member of the OHP Staff of the content of his meeting with Defendant Rhoades.

55.     On August 17, 2018, CPT German met with and informed State Representative Mike Sanders, a member of the Oklahoma Legislature, about the cheating scheme and violations of state law, Patrol policies, and Patrol ethics described herein.

56.     After the meeting with Captain German on August 11, 2018, Defendant Rhoades did not initiate an internal affairs investigation by the Office of Professional Standards into CPT German's report of this misconduct. Defendant Rhoades also did not initiate any investigation by Troop Z, the investigative division responsible for investigating violations of state law.

57.     Defendant Rhoades did not initiate any investigation because he himself played a central role in the cheating scheme and subsequent cover up. Defendant Rhoades directed Defendant Harrell to provide Defendant Orr with the questions and answers. Defendant Rhoades was motivated to promote Defendant Orr because of outside political pressure to promote Orr and to secure his own political favor from members of the Oklahoma Legislature and secure his own confirmation as Cabinet Secretary.

58.     Upon information and belief, Defendant Rhoades also provided Defendant Orr with the questions and answers to the promotional board interview for Troop R to be held on Friday, July 20, 2018.

59.     Upon information and belief, the questions to the Troop R promotional board oral interview were provided to Defendant Orr by Defendant Rhoades after Defendant Orr had completed the Troop A promotional board oral interview on July 18, 2018.

60.     In a recorded conversation between CPT German and Defendant Orr on August 14, 2018, Defendant Orr revealed that Defendant Rhoades asked Defendant Orr to leave the State Capitol and meet with him in Rhoades' state-provided Chevrolet Tahoe. Rhoades stated that "If I have one more person call me or come up to me and tell me I need to promote you, I'm going to lose my mind." Rhoades informed Orr that he (Orr) would be promoted to the rank of Captain. Rhoades informed Orr that he and Defendant Harrell would call the next day. Rhoades told Orr to "act surprised."

61.     Rhoades then asked Orr who he should promote to the position of Captain over Troop A, either Lt. Joe Lang or Lt. Jody Williams. Orr advised that Rhoades should promote Lt. Jody Williams.

62.     Subsequently, Lt. Jody Williams was promoted to the position of Captain over Troop A.

63.     Because CPT German saw no changes within the OHP and was never contacted by any investigative division of the OHP, he requested another meeting with Defendant Rhoades.

10

64.     On September 4, 2018, CPT German told Senator Roger Thompson, Chairman of the Appropriation and Budget Committee, about the cheating scheme and violations of state law, Patrol policies, and Patrol ethics described herein. In addition, CPT German and Senator Thompson discussed possible misappropriation of state funds at DPS concerning line-item budget funding for the teacher walk-out.

65.     CPT German served as the Logistics Section Chief and the Finance Section Chief during the teacher walk-out.

66.     The State Troopers who were assigned to provide security to the State Capitol Complex during the teacher walk-out were appropriated overtime monies for their service. However, Defendant Rhoades did not allocate those monies to the state troopers and, instead, misappropriated such funds to other uses at DPS. The troopers were required to use compensatory time.

67.     On September 11, 2018, CPT German and Defendant Rhoades met at Charleston's restaurant in Oklahoma City.

68.     During this September 11, 2018 meeting, CPT German again spoke to Defendant Rhoades about the cheating and corruption in the Oklahoma Highway Patrol. CPT German laid out a timeline of events surrounding these issues for Defendant Rhoades and informed him of the recorded conversations with Orr. Defendant Rhoades informed CPT German that he had a special relationship with Orr, and that he wanted to see Orr do well in his career. Furthermore, Defendant Rhoades informed CPT German that Senator Roger Thompson and other legislators thought a lot of Orr and wanted him promoted.

11

69.     CPT German informed members of the General and Command Staff about the substance and content of his meeting with Defendant Rhoades.

70.     On September 28, 2018, CPT German met with Defendant Rhoades for a third and final time in an effort to persuade Defendant Rhoades to take action to root out corruption in the promotional process, to void the upcoming promotions, and investigate the wrongdoing. This meeting took place at a Starbucks coffee shop in Midwest City.

71.     During the meeting, Defendant Rhoades told CPT German that he (Rhoades) wanted Orr promoted. CPT German got up to walk out and Defendant Rhoades asked CPT German, "Do you want to be a Major?" CPT German did not want any special or favorable treatment and indicated that this was exactly what was wrong with the promotional process at the Patrol.

72.     On October 30, 2018, CPT German attempted to meet with Senate President Pro Tempore Greg Treat. Senator Treat directed CPT German to meet with Ashley Kehl, Chief of Staff. CPT German revealed to Kehl the cheating scheme and violations of state law, Patrol policies, and Patrol ethics described herein.

73.     On November 7, 2018, CPT German followed up with Ashley Kehl via text message, as he was concerned that there had been no follow-up to his report. CPT German was advised that he would be contacted by Senator Treat's assistant, and CPT German could bring his evidence at that point in time. However, CPT German was never contacted.

74.     Instead of following up on this report of corruption, Senator Greg Treat informed former Trooper Chip Keating about CPT German's allegations.

75.     On November 13, 2018, Keating called Defendant Rhoades and notified him that CPT German was blowing the whistle on corruption and violations of law in OHP.

76.     Keating was later named Cabinet Secretary of Public Safety and Security.

77.     Treat, Keating, and other members and personnel of the State Legislature should have followed their duties and investigated corruption in the OHP rather than notifying the bad actor (Defendant Rhoades) that CPT German was exposing corruption and violations of law at the top level of DPS and OHP.

78.     Prior to November 13, 2018, Defendant Rhoades had not informed the Chief of the OHP about the alleged blackmail.

79.     Prior to November 13, 2018, Defendant Rhoades had not informed DPS General Counsel Megan Simpson about the alleged blackmail.

80.     Prior to November 13, 2018, Defendant Rhoades had not told internal affairs about the alleged blackmail.

81.     Prior to November 13, 2018, Defendant Rhoades had not told Troop Z about the alleged blackmail.

82.     Prior to November 13, 2018, Defendant Rhoades had not told David Prater or a representative of the Oklahoma County District Attorney's Office about the alleged blackmail.

83.     Prior to November 13, 2018, Defendant Rhoades had not told Mike Hunter or a representative of the Oklahoma Attorney General's Office about the alleged blackmail.

84.     On November 13, 2018, Defendant Rhoades falsely accused CPT German of blackmail and extortion to DPS General Counsel Megan Simpson.

13

85.     On November 13, 2018, DPS General Counsel Megan Simpson met with Defendant Harrell.

86.     Simpson informed Harrell that CPT German had met with a staff member of President Pro Tempore Treat and informed Treat about Harrell and Rhoades' misdeeds.

87.     After Simpson told Defendant Harrell that CPT German had blown the whistle on the misconduct described herein, Defendants Rhoades and Harrell met and decided to participate together in a conspiracy against CPT German to allege CPT German attempted to extort/blackmail Rhoades.

88.     Upon information and belief, Defendant Rhoades and Defendant Harrell met with Defendant Orr in order to coordinate their false stories.

89.     On November 19, 2018, Defendants Rhoades and Harrell met with CPT Jason Holt, Troop Z.

90.     Defendant Rhoades falsely accused CPT German of extortion and/or blackmail to CPT Holt, Troop Z.

91.     Defendant Rhoades falsely stated to CPT Holt that German attempted to compel Rhoades to use his authority as Commissioner and Cabinet Secretary to assist CPT German.

92.     Defendant Rhoades falsely denied that he and Defendant Harrell provided questions and answers to Orr for the Troop A and Troop R promotional board oral interviews.

93.     Defendant Harrell falsely denied that he and Defendant Rhoades provided questions and answers to Brian Orr for the Troop A and Troop R promotional board oral interviews.

94.     Defendant Orr falsely denied that he had received the questions and answers from Defendant Harrell and Defendant Rhoades for the Troop A and Troop R promotional board oral interviews.

95.     Defendant Rhoades provided this false information to Governor-elect Stitt, Keating, and Treat, by informing them that CPT German was under criminal investigation for blackmail.

96.     During the Troop Z investigation, CPT Holt and other investigators interviewed Defendant Rhoades, Defendant Harrell, Brian Orr, and Garrett Vowell, among others.

97.     Defendant Rhoades and Defendant Harrell repeated the false accusations and denials to CPT Holt and other investigators.

98.     Defendant Orr provided false information in that he denied receiving the specific questions and answers for the Troop A and Troop R promotional board interviews. Orr also provided this same false information to Governor-elect Stitt in a meeting with Stitt arranged by Keating and Defendant Rhoades. Upon information and belief, Orr repeated these false statements in later sworn testimony.

99.     In early December 2018, Defendant Rhoades requested a meeting with Oklahoma County District Attorney David Prater about CPT German.

15

100.    Defendant Rhoades, Defendant Harrell, and DPS General Counsel Megan Simpson met with DA Prater in December 2018.

101.    DA Prater did not bring any criminal charges against CPT German.

102.    At the same time as Defendant Rhoades and Defendant Harrell were carrying out their unlawful scheme against CPT German, CPT German was in the process of interviewing for the position of Director of the Oklahoma Department of Emergency Management.

103.    On Sunday, December 16, 2018, CPT German confirmed a personal interview with Governor-elect Stitt.

104.    The interview was set for Tuesday, December 18, 2018.

105.    On the day before the interview (Monday, December 17, 2018), OHP executed multiple search warrants based on the false accusations of blackmail.

106.    On Monday, December 17, 2018, OHP members conducted a search of CPT German's personal residence and his person. OHP Members also seized CPT German's personal phones and his personal firearm.

107.    OHP did not have any legal authorization to seize CPT German's personal firearm.

108.    On the same day, multiple OHP members conducted several custodial interrogations of CPT German.

109.    From the early morning hours until the late afternoon, OHP seized and detained CPT German without an arrest warrant and without any probable cause to justify an arrest. CPT German was not allowed to leave DPS headquarters until he was escorted

16

to another location later in the day. CPT German was not allowed to leave this other location until it was dark outside.

110.    After DA Prater declined charges against CPT German, Defendant Rhoades and Defendant Harrell prevailed upon the Oklahoma Attorney General to use the Multi-County Grand Jury to investigate CPT German.

111.    On February 14, 2019, CPT German was indicted by the Oklahoma Multi-County Grand Jury on one count of extortion/blackmail in alleged violation of 21 O.S. § 1481-1488, Case Number CF-2019-713.

112.    Following the indictment, CPT German was seized and taken to the Oklahoma County Detention Center.

113.    The State dismissed the indictment and re-filed the case by information on March 6, 2019.

114.    On June 28, 2019, the State dismissed the charges against CPT German prior to his preliminary hearing.

115.    As a result of the criminal investigation conducted by OHP and the indictment by the Multi-County Grand Jury, multiple media outlets broadcast stories containing the false allegations of blackmail against CPT German.

116.    Defendant Rhoades and Defendant Harrell caused these publications by uttering false statements and denials in order to commence the investigation and criminal prosecution.

**FIRST CAUSE OF ACTION – RETALIATORY PROSECUTION IN VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION**

117.   CPT German incorporates by reference all of the above and foregoing paragraphs as though set forth in full herein.

118.   The First Amendment to the United States Constitution provides, in part, that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. AMEND. I. This prohibition was made applicable to the States and their political subdivisions by virtue of the Fourteenth Amendment. U.S. CONST. AMEND. XIV; see also Cantwell v. Connecticut, 310 U.S. 296 (1940).

119.   "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory . . . criminal prosecutions, for speaking out." Hartman v. Moore, 126 S. Ct. 1695 (2006).

120.   CPT German engaged in constitutionally protected activity because he acted as an internal and external whistleblower on government corruption and violations of state law and ethics as described herein.

121.   Defendant Rhoades, Defendant Harrell, and Defendant Orr's actions as described herein caused CPT German to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity, in that, together, they concocted a false accusation of blackmail against CPT German in order to cause his prosecution.

122.    When considering the truth and not the lies told by Defendant Rhoades, Defendant Harrell, and Defendant Orr, there was no probable cause to prosecute CPT German for blackmail, extortion, or any other violation of any criminal law.

123.    Defendant Rhoades, Defendant Harrell, and Defendant Orr's actions were substantially motivated as a response to CPT German's protected conduct.

124.    Defendant Rhoades, Defendant Harrell, and Defendant Orr's actions were all taken under color of law.

125.    As a direct and proximate result of Defendant Rhoades, Defendant Harrell, and Defendant Orr's actions, German has suffered economic and non-economic damages, including lost wages and benefits, mental anguish and emotional distress, sleeplessness, anxiety, humiliation, embarrassment, damage to his professional reputation, inconvenience, loss of enjoyment of life, and other nonpecuniary losses, all to his detriment and damage in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00).

**WHEREFORE** Plaintiff Captain Troy D. German prays for judgment against Defendants Rhoades, Harrell, and Orr as follows:

(1)    For his actual damages in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00) and in accordance with the proof at the time of trial;

(2)    For punitive damages;

(3)    For a reasonable attorney's fee;

(4)    For his court costs;

(5)    For pre- and post-judgment interest as provided by law; and

19

(6)     For any other such and further relief as the Court or jury deems just and equitable that is allowed by law.

## SECOND CAUSE OF ACTION – ABUSE OF PROCESS IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION

126.    CPT German incorporates by reference all of the above and foregoing paragraphs as though set forth in full herein.

127.    In December 2018, the law was clearly established that an abuse of process under state law constituted a violation of the Fourth Amendment of the United States Constitution. Erikson v. Pawnee Cnty. Bd. of Cnty. Com'rs, 263 F.3d 1151 (10th Cir. 2001).

128.    Defendants Rhoades, Harrell, and Orr caused German's seizure and prosecution for a criminal felony for the improper purpose of discrediting German as German reported Rhoades and Harrell's misconduct, for the improper purpose of ending German's employment with the Oklahoma Highway Patrol, and for the improper purpose of interfering with German's ability to obtain the position of Director of the Oklahoma Department of Emergency Management.

129.    Defendants Rhoades, Harrell, and Orr's use of the court process was principally and primarily to achieve these improper purposes in order to benefit themselves in their corrupt scheme.

130.    Defendant Rhoades, Defendant Harrell, and Defendant Orr's actions were all taken under color of law.

131.    Defendants Rhoades, Harrell, and Orr took the actions described herein intentionally and with malice towards German, or in reckless disregard for his rights under the Fourth Amendment and Oklahoma common law.

132.    As a direct and proximate result of Defendants Rhoades, Harrell, and Orr's actions, German has suffered economic and non-economic damages, including lost wages and benefits, mental anguish and emotional distress, sleeplessness, anxiety, humiliation, embarrassment, damage to his professional reputation, inconvenience, loss of enjoyment of life, and other nonpecuniary losses, all to his detriment and damage in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00).

**WHEREFORE** Plaintiff Captain Troy D. German prays for judgment against Defendants Rhoades, Harrell, and Orr as follows:

(1)    For his actual damages in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00) and in accordance with the proof at the time of trial;

(2)    For punitive damages;

(3)    For a reasonable attorney's fee;

(4)    For his court costs;

(5)    For pre- and post-judgment interest as provided by law; and

(6)    For any other such and further relief as the Court or jury deems just and equitable that is allowed by law.

**THIRD CAUSE OF ACTION – MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION**

133.   CPT German incorporates by reference all of the above and foregoing paragraphs as though set forth in full herein.

134.   The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

135.   In December of 2018, the law was clearly established that a law enforcement officer would violate a citizen's Fourth Amendment rights by falsifying and fabricating evidence to facilitate a wrongful, malicious prosecution. Pierce v. Gilchrist, 359 F.3d 1279 (10th Cir. 2004).

136.   In or around December of 2018, Defendants Rhoades and Harrell fabricated and falsified evidence by (1) falsely stating that Captain German attempted to blackmail Rhoades, and (2) falsely stating that they did not provide the answers to Brian Orr for the promotional boards as alleged by German and as proven by the audio recordings of Brian Orr admitting to this cheating scheme.

137.   In or around December of 2018, Defendant Orr falsified and fabricated evidence by falsely stating that Defendants Rhoads and Harrell did not provide him with the specific questions and answers for the oral promotional board interviews for Troop A and Troop R.

22

138.   Based on the false and fabricated evidence, the Oklahoma Multi-County Grand Jury issued an indictment against Captain German. Later, the Oklahoma Attorney General's Office, relying on the same false, fabricated evidence, dismissed the indictment and re-filed the criminal charges based on an information.

139.   Captain German was arrested pursuant to the indictment and released on his own recognizance.

140.   On June 28, 2019, the Oklahoma Attorney General's Office dismissed the charges against Captain German under circumstances establishing Captain German's innocence. The charges were dismissed prior to the preliminary hearing. Furthermore, upon information and belief, Captain German alleges that District Attorney David Prater, who had been subpoenaed and who appeared to testify on behalf of the defense, would have testified that Defendant Rhoades' allegations did not meet the elements of blackmail, nor rise to the crime of blackmail.

141.   Defendants Rhoades, Harrell, and Orr caused German's arrest and continued prosecution for blackmail by presenting false, fabricated evidence to the Oklahoma Attorney General's Office.

142.   The blackmail charges terminated in German's favor.

143.   There was no probable cause to support the original arrest, confinement, or prosecution, when considering the true evidence and not the lies of these three law enforcement officers.

144.   Defendant Rhoades, Defendant Harrell, and Defendant Orr's actions were all taken under color of law.

145.    Defendants Rhoades, Harrell, and Orr took the actions described herein intentionally and with malice towards German, or in reckless disregard for his rights under the Fourth Amendment.

146.    As a direct and proximate result of Defendants Rhoades, Harrell, and Orr's actions, German has suffered economic and non-economic damages, including lost wages and benefits, mental anguish and emotional distress, sleeplessness, anxiety, humiliation, embarrassment, damage to his professional reputation, inconvenience, loss of enjoyment of life, and other nonpecuniary losses, all to his detriment and damage in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00).

**WHEREFORE** Plaintiff Captain Troy D. German prays for judgment against Defendants Rhoades, Harrell, and Orr as follows:

(1)     For his actual damages in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00) and in accordance with the proof at the time of trial;

(2)     For punitive damages;

(3)     For a reasonable attorney's fee;

(4)     For his court costs;

(5)     For pre- and post-judgment interest as provided by law; and

(6)     For any other such and further relief as the Court or jury deems just and equitable that is allowed by law.

## FOURTH CAUSE OF ACTION – CONSPIRACY
## IN VIOLATION OF 42 U.S.C. § 1983

147.   CPT German incorporates by reference all of the above and foregoing paragraphs as though set forth in full herein.

148.   Defendants Rhoades, Harrell, and Orr commenced or caused the commencement of, and had detailed knowledge of, the investigation and criminal prosecution of Captain Troy German.

149.   Defendants Rhoades, Harrell, and Orr knew that the allegation of blackmail against Captain German was false.

150.   Defendants Rhoades, Harrell, and Orr knew that they violated state law, regulations, Oklahoma Highway Patrol policies, and/or law enforcement ethics by providing a candidate for a promotion with the answers to the oral promotion board. Therefore, they knew that it was false to deny these allegations to the Oklahoma Attorney General's Office.

151.   Defendants Rhoades, Harrell, and Orr had an explicit or implicit agreement to commit an unlawful act, *i.e.* to cause the investigation and prosecution against Captain German, as well as abuse court process, in an effort to discredit Captain German, cause the end of his employment with the OHP, and prevent him from obtaining employment as the Director of the Oklahoma Department of Emergency Management.

152.   These defendants each took overt acts to accomplish their unlawful agreement.

153.   Defendant Rhoades provided false and fabricated evidence to members of the OHP, the OAG's office, and members of the Oklahoma Legislature, and likely others.

154.   Defendant Rhoades and Harrell falsely denied their involvement in the cheating scandal involving Orr to the OAG's office.

155.   Defendant Orr provided false statements during the investigation, to Governor-elect Stitt, and to the Multi-County Grand Jury.

156.   The actions of these Defendants, Rhoades, Harrell, and Orr, were necessary to complete the unlawful act in this instance, as either Rhoades, Harrell, or Orr could have exposed the scheme by providing honest, truthful information.

157.   The Defendants, Rhoades, Harrell, and Orr, had a single plan of action, *i.e.* to cause the malicious prosecution and/or to abuse the court process against Captain German, as reflected by their actions described herein.

158.   The Defendants named in this cause of action are subject to joint and several liability for all of the damages caused by the malicious prosecution and/or abuse of process.

159.   Defendant Rhoades, Defendant Harrell, and Defendant Orr's actions were all taken under color of law.

160.   Defendants Rhoades, Harrell, and Orr took the actions described herein intentionally and with malice towards German, or in reckless disregard for his rights under the Fourth Amendment.

161.   As a direct and proximate result of Defendants Rhoades, Harrell, and Orr's actions, German has suffered economic and non-economic damages, including lost wages and benefits, mental anguish and emotional distress, sleeplessness, anxiety, humiliation,

embarrassment, damage to his professional reputation, inconvenience, loss of enjoyment of life, and other nonpecuniary losses, all to his detriment and damage in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00).

**WHEREFORE** Plaintiff Captain Troy D. German prays for judgment against Defendants Rhoades, Harrell, and Orr as follows:

(1)     For his actual damages in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00) and in accordance with the proof at the time of trial;

(2)     For punitive damages;

(3)     For a reasonable attorney's fee;

(4)     For his court costs;

(5)     For pre- and post-judgment interest as provided by law; and

(6)     For any other such and further relief as the Court or jury deems just and equitable that is allowed by law.

Dated this 16th day of August, 2019.

/s/Barrett T. Bowers
Stanley M. Ward, OBA#9351
Woodrow K. Glass, OBA#15690
Barrett T. Bowers, OBA#30493
For the Firm: Ward & Glass, LLP
1601 36th Ave. NW, Ste. 100
Norman, Oklahoma 73072
(405) 360-9700
(405) 360-7902 (fax)
**ATTORNEYS FOR PLAINTIFF**

**ATTORNEYS' LIEN CLAIMED**
**JURY TRIAL DEMANDED**

27