# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| TROY D. GERMAN, | ) |
| --- | --- |
| Plaintiff, | ) |
| -vs- | ) Case No. CIV-19-0751-F |
| BILLY D. "RUSTY' RHOADES, Individually, et al., | ) |
| Defendants. | ) |

## ORDER

This action alleges civil rights claims under 42 U.S.C. § 1983 against four defendants, all of whom are sued in their individual capacities only, and all of whom move to dismiss this action under Rule 12(b)(6), Fed. R. Civ. P. Doc. no. 9. Plaintiff has responded, objecting to dismissal. No reply brief was filed. The motion will be denied for the reasons stated below.

### Standards

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir., 2007), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). To survive a motion to dismiss, a plaintiff must nudge his claims across the line from conceivable to plausible. *Id*. The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims. Ridge at Red Hawk, 493 F.3d at 1177. In conducting its

review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. *Id*. Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Ashcroft v. Iqbal, 556 U.S.662, 664 (2009). When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. The court will disregard mere "labels and conclusions" and "[t]hreadbare recitals of the elements of a cause of action" to determine if what remains meets the standard of plausibility. Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Some of defendants' arguments assert qualified immunity as a basis for dismissal. When qualified immunity is raised at the Rule 12(b)(6) stage, it is the defendant's conduct as alleged in the complaint that is scrutinized. *See*, Doe v. Woodard, 912 F.3d 1278, 1288 (10th Cir. 2019), citing Behrens v. Pelletier, 516 U.S. 299, 309 (1996). Thus, it is the pleadings, not the evidence or the actual facts, that determine the issue. Moreover, when a defendant asserts qualified immunity at the pleadings stage, the court must allow plaintiff an opportunity to come forward with either alleged facts, or proposed amended factual allegations, which show both that the defendant's alleged conduct violated the law, and that the law in question was clearly established when the alleged violation occurred. Pueblo Neighborhood
Page number:

review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. *Id*. Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Ashcroft v. Iqbal, 556 U.S.662, 664 (2009). When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. The court will disregard mere "labels and conclusions" and "[t]hreadbare recitals of the elements of a cause of action" to determine if what remains meets the standard of plausibility. Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Some of defendants' arguments assert qualified immunity as a basis for dismissal. When qualified immunity is raised at the Rule 12(b)(6) stage, it is the defendant's conduct as alleged in the complaint that is scrutinized. *See*, Doe v. Woodard, 912 F.3d 1278, 1288 (10th Cir. 2019), citing Behrens v. Pelletier, 516 U.S. 299, 309 (1996). Thus, it is the pleadings, not the evidence or the actual facts, that determine the issue. Moreover, when a defendant asserts qualified immunity at the pleadings stage, the court must allow plaintiff an opportunity to come forward with either alleged facts, or proposed amended factual allegations, which show both that the defendant's alleged conduct violated the law, and that the law in question was clearly established when the alleged violation occurred. Pueblo Neighborhood

Health Centers, Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir. 1988).[1] Unless such a showing is made, the defendant prevails on his qualified immunity defense. *Id*. Relying on generalizations or on the broad history of a constitutional amendment or statute is insufficient for determining that a right is clearly established. *See*, Ashcroft v. Al-Kidd, 563 U.S. 731, 742 (2011) ("We have repeatedly told courts … not to define clearly established law at a high level of generality. … The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.")

Summary of the Complaint

Plaintiff is Troy D. German, who is alleged to have retired from the Oklahoma Highway Patrol (OHP) at the rank of Captain.

Defendants are Billy D. "Rusty" Rhoades, who allegedly resigned (in lieu of termination) from his position as Commissioner of the Department of Public Safety (DPS); Michael Harrell, who allegedly resigned (in lieu of termination) from his position as Chief of the OHP; Brian Orr, who allegedly remains employed as a Captain in the OHP; and Megan Simpson, who is alleged to have resigned (in lieu of termination) from her position as General Counsel and Chief of Administration with DPS. Doc. no. 1, ¶¶ 1-5.

The First Amended Complaint (doc. no. 3, hereafter "complaint") alleges four § 1983 claims: 1) retaliatory prosecution in violation of the First Amendment to the United States Constitution; 2) abuse of process in violation of the Fourth Amendment to the United States Constitution; 3) malicious prosecution in violation

---

[1] Plaintiff has been afforded this opportunity, as plaintiff has filed a response brief which identifies the allegations and law plaintiff relies on to defeat defendants' qualified immunity arguments.

of the Fourth Amendment to the United States Constitution; and 4) a civil conspiracy to bring false blackmail charges against the plaintiff. All four claims are alleged against all four defendants.

The claims are based on allegations regarding a cheating scheme within OHP which helped Orr attain the rank of Captain, followed by defendants' falsification and fabrication of evidence in order to bring a false blackmail charge against plaintiff after plaintiff reported the cheating scheme to persons inside and outside OHP.

According to the complaint, Orr was given information about questions he would be asked during interviews for the position of Captain. The complaint alleges that Rhoades called Orr in the presence of Harrell, after which Rhoades handed the phone to Harrell who then provided Orr with four questions Orr would be asked during a board interview for a Troop A Captain position. Doc. no. 3, ¶¶27-40. The complaint also alleges that Rhoades provided Orr with the questions and answers for purposes of a board interview for a Troop R Captain position. *Id.*, ¶ 59.

The complaint alleges Orr told plaintiff about the information he had received regarding the Troop A board interview, including Harrell's involvement in the cheating scheme. *Id.*, ¶¶ 41, 44, 49. The complaint alleges numerous communications or meetings in which plaintiff brought the alleged cheating scheme to the attention of people within the agency (some of whom were allegedly involved in the scheme) in an effort to effect positive change at OHP, as well as meetings plaintiff had with the OSBI and members of the state legislature in which the cheating scheme was discussed. *See, e.g., Id.*, ¶¶ 50, 51, 56, 61, 65, 68, 71, 74.

The complaint alleges that after plaintiff reported the cheating scheme, Rhoades and Simpson concocted a false story, claiming plaintiff had been involved

in blackmailing Rhoades. The complaint alleges this was an effort to discredit plaintiff's contentions about the cheating scheme and also to save Rhoades' career. *Id*., ¶ 85. The complaint alleges that after Simpson told Harrell that plaintiff had blown the whistle on the cheating, Rhoades, Harrell and Simpson agreed to participate in a conspiracy against plaintiff, by which they would contend that plaintiff had attempted to extort or blackmail Rhodes. *Id*., ¶ 89. The complaint alleges that Rhoades, Harrell and Simpson also met with Orr to coordinate their false stories. *Id*., ¶ 90. The complaint alleges that Rhoades, Harrell and Orr made false statements to investigators, to Governor-elect Stitt, and to others. *Id*., ¶¶ 91-100. The complaint alleges that Orr repeated these false statements to Stitt and others, and also repeated the false statements in sworn testimony. *Id*., ¶ 100.

The complaint alleges that Rhoades, Harrell and Simpson met with District Attorney David Prater and that Rhoades described his allegations of blackmail against plaintiff to Prater, after which Prater stated he believed Rhoades was lying and that the only potential criminal acts he had heard in Rhoades' description of events was that of Rhoades and Harrell. *Id*., ¶¶ 105-108. The complaint alleges that Rhoades asked Prater to file blackmail charges against plaintiff, and that Simpson stated the allegations clearly met the definition of blackmail. *Id*., ¶¶ 111-113. The complaint alleges that Prater stated that if Rhoades believed he was being blackmailed, Rhoades should have the matter investigated and that after the investigation Prater would review it to consider whether plaintiff had committed any criminal acts. *Id*., ¶ 118. The complaint alleges that after the meeting, Prater contacted the Oklahoma Attorney General's Office and advised that they should be skeptical of any potential charges brought by OHP against plaintiff. *Id*., ¶ 121.

The complaint alleges that during this time plaintiff was in the process of interviewing for the position of Director of the Oklahoma Department of

Emergency Management. The complaint alleges that on the day before plaintiff was to interview with Governor-elect Stitt, OHP executed multiple search warrants based on the false accusations of blackmail. *Id*., ¶¶ 122-25. The complaint alleges that plaintiff's property and records were seized and that OHP members conducted several custodial interrogations of plaintiff. *Id*., ¶¶ 126-28. The complaint alleges that OHP seized and detained plaintiff without an arrest warrant and without probable cause to justify an arrest. *Id*., ¶ 129.

The complaint alleges that after Prater declined to file charges against plaintiff, defendants Rhoades, Harrell and Simpson prevailed upon the Oklahoma Attorney General to use the multi-county grand jury to investigate plaintiff's purported blackmail. *Id*., ¶ 130. The complaint alleges that plaintiff was indicted on one count of "extortion/blackmail," following which plaintiff was taken to the Oklahoma County Detention Center. *Id*., ¶¶ 131-33. The complaint alleges that the indictment was dismissed and re-filed by information, and that the charge was ultimately dismissed prior to plaintiff's preliminary hearing. *Id*., ¶¶ 134-35.

The complaint alleges that prior to the dismissal of the charge, Prater met with the Assistant Attorney General who was prosecuting the case. *Id.*, ¶ 136. The complaint alleges that Prater told the Assistant Attorney General that Prater believed the only potential criminal actions were those committed by Rhoades and Harrell. *Id*., ¶ 137. The complaint alleges that Prater also told the Assistant Attorney General that he (Prater) would be testifying as a favorable witness for the plaintiff at the upcoming preliminary hearing. *Id*. The complaint alleges that the charges were dismissed with the firm and definite conviction that plaintiff was innocent. *Id*., ¶138.

The complaint alleges that Rhoades, Harrell and Simpson were given options to retire, resign or be terminated, and that they resigned. *Id*., ¶¶ 141-42.

The complaint alleges that in addition to their retaliatory and malicious prosecution of the plaintiff, Rhoades, Harrell and Simpson took punitive actions against other members of the OHP who had supported plaintiff. *Id*., ¶¶ 143-44.

## Discussion

Defendants' arguments for dismissal are set out in Proposition III of their moving brief.

Proposition III.A. Defendants argue that any pendent state-law claims should be dismissed for failure to comply with the Oklahoma Governmental Tort Claims Act (OGTCA). No state-law claims are alleged in this action. In addition, compliance with the OGTCA is not required to bring § 1983 claims. *See*, Tiemann v. Tul-Center, Inc., 18 F.3d 851, 853 (10th Cir. 1994) (district court erred in concluding OGTCA immunized defendants from § 1983 liability; conduct by persons acting under color of state law which is wrongful under § 1983 cannot be immunized by state law). This ground for dismissal is rejected.

Proposition III.B. Defendants make a series of arguments based on their contention that after eliminating allegations that are merely conclusory, plaintiff is not left with sufficient alleged facts to sustain his causes of action against any of the individual defendants.

Proposition III. B. (1) (A). Defendants argue the Whistleblower Protection Act does not apply. No claim for relief is alleged under the Whistleblower Protection Act, and this ground for dismissal is rejected.

Proposition III. B. (1) (B). Defendants argue that their alleged conduct is not a matter of public concern. This argument relates to plaintiff's First Amendment claim (the first cause of action).[2] The court rejects this argument

---

[2] To the extent plaintiff intended this argument as a basis for dismissing a claim brought under the Whistleblower Protection Act, the court notes, again, that no such claim is alleged.

because the circumstances of plaintiff's speech—plaintiff's exposure of a cheating scheme to promote defendant Orr within the OHP—plausibly show the speech to be on a topic of public concern. *See generally*, Brammer-Hoelter v. Twin Peaks Charter Academy, 492 F.3d 1192, 1206 (10th Cir. 2007) ("Speech concerning potential illegal conduct by government officials is inherently a matter of public concern.").[3]

Proposition III. B. (2). Defendants argue that the complaint fails to allege a claim against defendant Rhoades. Defendants point out that when a plaintiff sues a supervisor under § 1983, the plaintiff must allege facts to show personal participation in the constitutional violation by the supervisor and facts to show the supervisor took those acts with the requisite state of mind. This argument for dismissal is wholly without merit and is rejected. The complaint is replete with allegations which plausibly show Rhoades' personal involvement in the alleged constitutional violations and which meet any applicable state of mind standard. For example, the complaint alleges that after plaintiff reported the cheating scandal, Rhoades provided false information about plaintiff's purported blackmail to Stitt and to Prater; that Rhoades asked Prater to file charges; that after Prater declined to file charges, Rhoades, Harrell and Simpson prevailed upon the Oklahoma Attorney General to use the grand jury to investigate plaintiff; and that Rhoades, Harrell and Simpson met with Orr to coordinate their false stories in order to falsely accuse plaintiff of extortion or blackmail.

Propositions III. B. (3), (4), (5). Defendants argue the complaint does not allege facts sufficient to show the personal involvement and requisite state of mind

---

[3] Plaintiff's response brief argues that the cheating exposed by plaintiff was illegal because it violated the Oklahoma Personnel Act, the purpose of which is to ensure the hiring and advancement of public employees in accordance with principles of merit and fitness. Plaintiff also argues that the cheating violated various policies and ethical standards.

8

of Harrell, Orr or Simpson.  The court rejects this argument.  The complaint includes allegations which plausibly show the requisite involvement and state of mind of these defendants.  To cite just one of those allegations here, the complaint alleges, for example, that Rhoades, Harrell and Simpson met with Orr "to coordinate their false stories" in order to falsely accuse plaintiff of extortion or blackmail.  *Id*., ¶ 90.

Proposition III.C.  Defendants argue the first amendment retaliatory arrest claims (the first cause of action) as well as the malicious prosecution claims alleged under the Fourth Amendment (the third cause of action) fail because the complaint does not allege any facts which identify an absence of probable cause with respect to the blackmail charge brought against plaintiff.  The court rejects this argument.  The complaint sets out numerous facts which, when read together, plausibly allege an absence of probable cause.  For example, pertinent to the first amendment claim, the complaint alleges that all four defendants concocted a false accusation of blackmail against plaintiff in order to cause his prosecution, and alleges that defendants did so in response to plaintiff's protected conduct.  Doc. no. 3, ¶¶ 149-51.  Pertinent to the fourth amendment malicious prosecution claim, the complaint alleges: that Simpson, Rhoades and Harrell concocted the false story of blackmail and the false denials of cheating, in return for which Simpson received favorable treatment in the form of a promotion; that Orr testified falsely; and that based on this false and fabricated evidence the grand jury indicted plaintiff.  *Id*., ¶¶ 164-67.

Proposition III. D.  Defendants argue they are entitled to qualified immunity, making two specific arguments.

First, in Proposition III. D. (1), defendants argue the complaint makes no showing of protected speech because the alleged statements plaintiff made when he reported the cheating scheme were statements pursuant to plaintiff's official

duties. This qualified immunity argument is presumably aimed at the first amendment retaliation claim (the first cause of action). Defendants contend the speech in question was about an internal hiring process and thus was employee-speech, which is not protected by the First Amendment.[4] Thus, within the qualified immunity context, defendants appear to argue that there are no allegations of a constitutional violation.

The court rejects this argument for dismissal. The complaint alleges facts which, if proven, plausibly show that plaintiff's reports about the cheating scheme constituted speech which was not in furtherance of any duties plaintiff was paid or obliged or commissioned to perform as part of his employment. *See generally*, Brammer-Hoetler, 492 F.3d 1192, 1204 ("not all speech that occurs at work is made pursuant to an employee's official duties"; "[n]or is all speech about the subject matter of an employee's work necessarily made pursuant to the employee's official duties"; "we must take a practical view of all the facts and circumstances surrounding the speech and the employment relationship."). The complaint plausibly alleges that plaintiff spoke as a citizen on a matter of public concern. *See*, Lane v. Franks, 573 U.S. 228, 235-36 (2014) ("Speech by citizens on matters of public concern lies at the heart of the First Amendment…. This remains true when speech concerns information related to or learned through public employment.")

In addition, plaintiff has identified clearly established law to support his first amendment retaliation claim. Among the authorities plaintiff cites is Hartman v. Moore, 547 U.S. 250, 256 (2006), which states that "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting

---

[4] If a government employee speaks pursuant to his official duties, there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created. Brammer-Hoelter, 492 F.3d 1192, 1202 (10th Cir. 2007), quoting Garcetti v. Ceballos, 547 U.S. 410 (2006).

an individual to retaliatory actions, including criminal prosecutions, for speaking out").

Plaintiff has carried his burden in response to defendants' qualified immunity argument.

Second, in Proposition III. D. (2), defendants argue they are entitled to qualified immunity on the abuse of process claim alleged under the Fourth Amendment (the second cause of action) because no clearly established law holds that their alleged conduct constitutes a violation of law for purposes of this type of claim. In response, plaintiff identifies authorities indicating that an abuse of process claim can potentially be brought under the Fourth Amendment based on allegations that defendants brought a prosecution without probable cause. *See,* Erikson v. Pawnee Cty. Bd. of Cty. Comm'rs, 263 F.3d 1151, 1153, 1155, n.5 (10th Cir. 2001) (plaintiff argued defendants violated his federal civil rights by conspiring to prosecute him without probable cause or sufficient evidence; as part of the court's discussion of plaintiff's § 1983 claim brought under the Fourth Amendment for malicious prosecution, the court observed that "state law provides the elements for a claim of abuse of process under §1983," stating that, under Oklahoma law, an ulterior or improper purpose is an essential element of such a claim); Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1244 (10th Cir. 2003) ("In this circuit, state law provides the starting point for a constitutional claim of malicious prosecution and abuse of process," citing Erikson).

In both Erickson and Roska, the court concluded that plaintiffs had not sufficiently alleged constitutional violations based on abuse of process because there were no allegations of an improper or ulterior purpose. But that is not the situation here. The complaint includes allegations of defendants' improper purposes when they caused plaintiff's seizure and his prosecution for the blackmail

charge. Those improper purposes include discrediting plaintiff's contentions about the cheating scheme, retaliating against plaintiff for having brought the cheating scheme to the attention of others, and interfering with plaintiff's ability to obtain the position of Director of the Oklahoma Department of Emergency Management. Doc. no. 3, ¶ 156. Thus, the complaint alleges that defendants' improper purposes for abusing process in violation of the Fourth Amendment were purposes which benefitted themselves and their corrupt scheme. *Id.*, ¶ 157.

Moreover, in Pierce v. Gilchrist, 359 F.3d 1279, 1299 (10th Cir. 2004), the court of appeals cited Supreme Court rulings for the principle "that knowingly, or with reckless disregard for the truth, including false information in the affidavit supporting the arrest warrant constitute[s] a Fourth Amendment violation." Although Gilchrist brought § 1983 claims based on a malicious prosecution theory rather than an abuse of process theory, the following statement in Gilchrist is relevant. "Even if there were no case directly on point imposing liability on officials whose falsification of evidence occurred at the post-arrest stage, an official in Ms. Gilchrist's position could not have labored under any misapprehension that the knowing or reckless falsification and omission of evidence was objectively reasonable." Gilchrist, 359 F.3d 1279, 1299. The court observed that if it were proven at trial that Ms. Gilchrist had engaged in a deliberate attempt to ensure the prosecution and conviction of an innocent man, then such conduct would violate the plaintiff's constitutional rights "with obvious clarity." *Id.*, p. 1300.

The court concludes that plaintiff has identified clearly established law to support his fourth amendment abuse of process claim.

In addition, to the extent that defendants' assertion of qualified immunity necessarily challenges plaintiff's allegations on the ground that the allegations are insufficient to show a constitutional violation, plaintiff has met that standard.

Allegations already reviewed in this order plausibly allege abuse of process in violation of the Fourth Amendment.

Plaintiff has carried his burden in response to defendants' qualified immunity argument. This argument is rejected as a basis for dismissal of the fourth amendment abuse of process claim.

Proposition III. E. Defendants argue that no fourteenth amendment claim exists for malicious prosecution. No such claim is alleged in this action. and the court rejects this argument for dismissal.

As part of Proposition III. E., defendants also argue they are entitled to qualified immunity on the malicious prosecution claim asserted under the Fourth Amendment (the third cause of action) because one of the elements of that type of claim is a favorable termination of the proceedings in question. Defendants argue that, for this purpose, the alleged dismissal of the blackmail charge does not constitute a favorable termination of those proceedings.

In response, plaintiff agrees that a § 1983 malicious prosecution claim requires the underlying action to have been successfully terminated in the plaintiff's favor. Plaintiff argues that criminal proceedings are terminated in favor of the accused by the formal abandonment of proceedings (which is what is alleged to have happened here), if the charge was abandoned for a reason that indicates innocence or that is inconsistent with guilt. *See*, Wilkins v. DeReyes, 528 F.3d 790, 802-03 (10th Cir. 2008) (reasons given for the dismissal of the charges did not demonstrate a favorable termination of the case because the reasons for termination did not indicate the innocence of the accused and were reasons which were at least consistent with guilt).

The court finds that numerous allegations plausibly show that the blackmail charge brought against plaintiff was dropped for reasons which indicate innocence

or are inconsistent with guilt. For example, the complaint alleges that Prater spoke with the prosecutor and told the prosecutor he (Prater) would testify in favor of plaintiff at the preliminary hearing, after which the blackmail charge was dismissed. Doc. no. 1, ¶¶ 137-38.

This argument for dismissal is rejected.

<u>Proposition III. F</u>. Defendants argue that plaintiff's indictment by the grand jury is an intervening factor which bars his claims. This argument for dismissal is rejected. The complaint alleges the grand jury was presented with false and fabricated evidence due to the actions of the defendants. In these circumstances, the indictment offers no shield to the defendants. *See*, <u>Robinson v. Maruffi</u>, 895 F.2d 649, 655-56 (10th Cir. 1990) (decisions to indict or to prosecute do not "shield a police officer who deliberately supplied misleading information that influenced the decision.")

<u>Proposition III. G</u>. Finally, defendants argue that the civil conspiracy claim is not plausible because the allegations of a conspiracy are merely conclusory and are otherwise insufficient. This argument for dismissal is rejected. The complaint includes numerous, detailed allegations in support of an alleged conspiracy to violate constitutional protections, along with allegations regarding each of the defendants' alleged role in that conspiracy.

<u>Conclusion</u>

After careful consideration, defendants' motion to dismiss is **DENIED**.

IT IS SO ORDERED this 9th day of December, 2019.

*[Signature]*
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

19-0751p003.docx