## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TROY D. GERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-19-751-F |
| | ) | |
| BILLY D. "RUSTY" RHOADES, individually; | ) | |
| MICHAEL HARRELL, individually; | ) | |
| BRIAN ORR, individually; and | ) | |
| MEGAN SIMPSON, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS BILLY D. "RUSTY" RHOADES'S, MICHAEL HARRELL'S, AND MEGAN L. SIMPSON'S RESPONSE AND OBJECTION TO PLAINTIFF TROY GERMAN'S MOTION TO COMPEL THE OKLAHOMA ATTORNEY GENERAL TO PRODUCE STATE GRAND JURY MATERIAL

Defendants, Billy D. "Rusty" Rhoades, Michael Harrell, and Megan L. Simpson (all cumulatively the "RHS Defendants"), by and through their attorneys of record, **DRUMMOND LAW, PLLC**, hereby respectfully submit their Response and Objection to *Plaintiff Troy German's Motion to Compel the Oklahoma Attorney General to Produce State Grand Jury Materials* (the "Motion") (doc. 52).

### I.    INTRODUCTION

This case has been pending since August 16, 2019. Yet, Plaintiff Troy D. German ("German") inexplicably waited until August 19, 2020 to serve a subpoena on the Oklahoma Attorney General seeking grand jury records. Despite making no effort to obtain grand jury records for over a year, German is now using this Motion as grounds to indefinitely postpone this case.

Although the grand jury records will undoubtedly contain German's recorded confession to the crime of blackmail, and thus, vindicate the RHS Defendants, the Oklahoma Attorney General has an obligation to protect the secrecy of the grand jury proceedings.  21 O.S. 2011 § 355.  Therefore, if the Court orders the release of the records at this late date in the case, then this case will likely be subject to a lengthy delay while the Oklahoma Attorney General appeals the decision.  As a result, to prevent further delay, the RHS Defendants are forced to object to German's request to compel the grand jury records.

As to the merits of the Motion, German is unable to show a particularized need for the grand jury records.  First, German has failed to address the Oklahoma Attorney General's prior allegation that the criminal charges were dismissed as part of a settlement agreement.  If the Oklahoma Attorney General's allegation regarding a settlement were true, then German is ineligible to assert a malicious prosecution claim, and thus, cannot show a particularized need for the records.  Second, even if he were to repudiate his settlement agreement with the State, German still confessed to the crime of blackmail on videotape and audiotape.  Therefore, he is unable to show a likely success in defeating the presumption of probable cause.  Consequently, he is unable to show a particularized need for the grand jury records.

## II.    ARGUMENTS AND AUTHORITIES

**A.    German Has Not Shown a Particularized Need for the Grand Jury Records Because He Has Failed to Address the Oklahoma Attorney General's Prior Allegation That the Criminal Case Was Resolved Through a Settlement Agreement.**

According to his Motion, at a minimum, German must show a particularized need for the grand jury records.[1]  German states that he needs the records because "his claim for malicious prosecution would be hindered by denial of access to the grand jury materials." Motion, p. 8. German then goes on to discuss only one element of a malicious prosecution claim: lack of probable cause.  German conveniently ignores the fact that, in addition to a lack of probable cause, he must also establish "successful termination [of the underlying case] in favor of the plaintiff." *Crudup v. Schulte*, 12 Fed. Appx. 682, 685 (10th Cir. 2001) (unpublished) (quoting *Parker v. City of Midwest City*, 1993 OK 29, 850 P.2d 1065, 1067).

German has failed to show a successful termination of the underlying case in his favor.   "[A]bandonment of the proceedings is ordinarily insufficient to constitute a favorable termination if the prosecution is abandoned pursuant to an agreement of compromise with the accused....'" *Wilkins v. DeReyes*, 528 F.3d 790, 802–03 (10th Cir. 2008) (internal citation omitted).  Here, in the state court proceedings regarding release of the grand jury records, the Oklahoma Attorney General's office informed the state court that it only dismissed the blackmail charge against German as part of a settlement

---

[1] The RHS Defendants do not have a position on whether the Tenth Circuit would permit a federal district court to overrule the decision to deny access to records by the state court charged with protecting grand jury proceedings.  However, German's request can still be easily resolved without addressing these complicated issues of jurisdiction and comity.

agreement.  Specifically, the charge against Plaintiff was dismissed in exchange for Plaintiff agreeing to resign his employment with the State.  *See* June 27, 2019 Letter from German to Department of Public Safety, a copy attached hereto as Exhibit "1"; and Tim Willert, *AG drops blackmail case against Highway Patrol captain*, The Oklahoman, June 29, 2019, an electronic copy attached hereto as Exhibit "2."

It does not appear that German ever addressed this allegation in the state court proceedings.  German likewise failed to address this threshold issue in the Motion: "**Did German enter into a settlement agreement whereby the criminal blackmail charge against him was dismissed in exchange for his resignation of employment with the State as alleged by the Oklahoma Attorney General's office**?"  It is understandable that German does not want to answer this question.  If the answer is yes, the blackmail charge was dismissed as part of a settlement agreement, then German clearly has no particularized need for the grand jury records because there is no possible malicious prosecution claim.  Of course, if the answer is no and German is repudiating the generous settlement agreement resolving his criminal case, then German opens himself up to the criminal charges being refiled. After all, the State has a recorded confession by German to the crime of blackmail.  Nevertheless, now that German is making an extraordinary request to overrule the state court and force the release of protected grand jury materials, he must finally go on the record and definitively state whether he is repudiating the generous settlement agreement resolving the criminal case.  Absent an answer to this question, the Court is unable to properly analyze whether German has a particularized need for the grand jury records.

4

**B.      German Has Failed to Show a Likely Success in Defeating the Presumption of Probable Cause.**

Even if German repudiates the generous settlement agreement with the State, he is still unable to show a particularized need.  In his Motion, German correctly indicates that "the party requesting disclosure of grand jury materials, either in whole or in part, must make a showing of likely success in defeating the presumption of probable cause." *Anilao v. Spota*, 918 F.Supp.2d 157, 176 (E.D.N.Y. January 25, 2013) (internal quotation marks and citation omitted). "[T]he party requesting disclosure must present more than its own version of events to potentially rebut the presumption of probable cause created by a grand jury indictment." *Id*. (internal citations omitted).

In this case, German is unable to show a likely success in defeating the presumption of probable cause.  German claims that he will likely succeed in defeating the presumption of probable cause because he denies that he sought a personal benefit when blackmailing Billy D. "Rusty" Rhoades ("Rhoades").  As a preliminary matter, this appears to simply be a situation where German is doing nothing more than presenting his version of events.  As stated above, this is insufficient to meet the burden of showing a likely success in rebutting the presumption of probable cause.  However, even if German presented something more than his own version of events, German's denial of seeking a personal benefit is not relevant.

**1.      German Did Not Personally Have to Benefit in Order to Commit the Crime of Blackmail.**

German suggests in his Motion that he must have sought a personal benefit in order to have committed the crime of blackmail.  This is a misstatement of law.  A plain

reading of Oklahoma's blackmail statute repudiates German's argument. The crime of blackmail encompasses verbal, written or print communications "with intent to extort or gain any thing of value from another **or to compel another to do an act against his or her will**…." 21 O.S. 2011 § 1488 (emphasis added). As a result, the crime of blackmail does not require a showing that German sought a personal benefit. Instead, the crime of blackmail is implicated as long as German sought "to compel another to do an act against his or her will." Accordingly, no evidence of a personal benefit was required to charge German with the crime of blackmail. Therefore, it is simply not relevant whether German disputes that he sought a personal benefit while blackmailing Rhoades.

## 2.    German Did in Fact Confess to the Crime of Blackmail.

In his Motion, German disputes that he confessed to the crime of blackmail. However, in his Partial Response to the RHS Defendants' Motion for Summary Judgment ("Partial Response to MSJ"), doc. 37, German did not dispute that he sought to compel Rhoades to (1) discipline Harrell for the alleged cheating; (2) make changes to the Department's promotional policies; (3) require the Department to add an assessment center for promotions; (4) add additional majors in the Department; and (5) vacate the promotion of Orr.[2]  Further, German did not dispute that he threatened to disclose the alleged cheating to a list of elected officials and media members if German's written

---

[2] Statement of Undisputed Material Fact ("SOUF") Nos. 5 – 7 from the RHS Defendants' Motion for Summary Judgment (doc. 33), which were not disputed in German's Partial Response to MSJ (doc. 37).

demands were not met by German's written deadlines.[3]   This clearly satisfies the elements of the crime of blackmail found in 21 O.S. 2011 § 1488.   Consequently, there was probable cause to accuse and indict German of blackmail.

Notwithstanding his admissions on videotape and audiotape to the crime of blackmail, German latches on to the following language in the Indictment issued by the Grand Jury and Information issued by the Oklahoma Attorney General's office accusing German of seeking "to extort or gain… specifically promotions or aiding in appointments for himself or others within the Oklahoma Highway Patrol, or to compel Rusty Rhoades to do such acts against his will."   Without citation to authority, German suggests that the Court is limited to determining whether his confession established this broad allegation.

As a preliminary matter, the final charging document in the criminal case against German was the Information filed on March 6, 2019.   Oklahoma criminal procedure states that "[a]n information may be amended in matter of substance or form at any time before the defendant pleads, without leave…."  22 O.S. 2011 § 304.   The docket from the criminal case attached as Exhibit "4" to German's Partial Response to MSJ shows that German never entered a plea.   Consequently, the Information was still subject to modification when German entered into a settlement agreement with the State to resolve the blackmail charge.   Therefore, we do not know what the final charging document would have stated because German entered into his settlement agreement with the State prior to entering his plea.

---

[3] SOUF Nos. 5 – 9 from the RHS Defendants' Motion for Summary Judgment (doc. 33), which were not disputed in German's Partial Response to MSJ (doc. 37).

Regardless, all of German's confessions fall under the broad allegation that German sought "to extort or gain… specifically promotions or aiding in appointments for himself or others within the Oklahoma Highway Patrol, or to compel Rusty Rhoades to do such acts against his will."  German's confession that he demanded in exchange for his silence additional majors in the Department certainly sought to aid in appointments for himself and others with the Oklahoma Highway Patrol.  German and/or others would assume the new major positions demanded by German. Consequently, German and/or others would clearly be aided with appointments or promotions through the creation of additional positions at the rank of major.

Likewise, his demands in exchange for his silence that the Oklahoma Highway Patrol make changes to promotional policies and add an assessment center would aid German or others with appointments or promotions.  German claims that these suggested changes were to make the promotions "legitimate."  Partial Response to MSJ, p. 7.  Consequently, with German's demanded changes, "legitimate applicants" are aided with appointments or promotions.   The broad category of "others" certainly includes "legitimate applicants."  Therefore, changes to promotional policies and the addition of an assessment center would aid German and others with appointments and promotions.

Finally, German's demand in exchange for his silence that Orr's promotion be vacated and Harrell be disciplined would aid in the appointments for himself and others with the Oklahoma Highway Patrol.  At a minimum, if Orr's promotion were vacated, then Orr's vacated position would suddenly be open to German or others.  The discipline of Harrel could likewise open up his position to German or others.   Therefore, German's

demand that Orr's promotion be vacated and Harrell be disciplined would aid in the appointments for himself and others.  Consequently, all of German's confessed demands in exchange for his silence fall under the broad allegations in the Indictment and Information.  Therefore, German clearly confessed to the crime of blackmail, and there was probable cause to accuse and indict German of this crime.

As a result, German has not shown a likely success in defeating the presumption of probable cause, and thus, German has not shown a particularized need for the grand jury records.  Accordingly, German is not entitled to a release of the grand jury records.

**C.    Even if the Court Orders a Release, It Should Order All Grand Jury Records Related to German Be Released.**

In his Motion, German limits his request to those grand jury records that "relate to: (1) Rusty Rhoades' false allegation that German sought a promotion or appointment in exchange for not blowing the whistle on Rhoades [*sic*] and Harrell's violation of state law by cheating on a promotional examination; and (2) the cheating scheme itself, particularly any admission or denial by Rhoades/Harrell/Orr that was relayed to the grand jury."

This requested limitation is improper.  Notwithstanding his recorded confession to the crime, German only asserts that the Defendants fabricated evidence that he sought a promotion or appointment while blackmailing Rhoades.  As discussed above, this denial is not relevant.  Nevertheless, "[i]f evidence is falsified or withheld, the probable cause determination is made by considering whether, excluding the falsified inculpatory evidence or including the withheld exculpatory evidence, probable cause existed to

prosecute." *McCarty v. Gilchrist*, 646 F.3d 1281, 1286 (10th Cir. 2011). "In other words, the Court asks whether – considering the exculpatory evidence and ignoring the falsified evidence – a person of reasonable caution would believe that the individual committed a crime." *McIntyre v. Unified Gov't of Wyandotte Cty. & Kansas City, Kansas*, CV 18-2545-KHV, 2020 WL 1028303, at *16 (D. Kan. Mar. 3, 2020)[4]. As a result, if the grand jury records were released, the parties and the Court must see all of the evidence submitted to the grand jury related to Rhoades to determine the existence of probable cause. Therefore, if the Court orders a release, it should order all grand jury records related to German be released, not just the limited records sought by German.

## **CONCLUSION**

For the foregoing reasons, the RHS Defendants respectfully request that the Court overrule and deny *Plaintiff Troy German's Motion to Compel the Oklahoma Attorney General to Produce State Grand Jury Materials*.

---

[4] A copy of this case is attached hereto as Exhibit "3."

**Respectfully Submitted,**

**By:** s/Garry M. Gaskins, II
    Gentner F. Drummond, OBA #16645
    Gentner.Drummond@drummond.law
    Garry M. Gaskins, II, OBA #20212
    Garry.Gaskins@drummond.law
    Logan L. James, OBA #32430
    Logan.James@drummond.law
    DRUMMOND LAW,   PLLC
    1500 South Utica Avenue, Suite 400
    Tulsa, Oklahoma 74104-6522
    Telephone: (918) 749-7378
    Facsimile: (918)749-7869
    *Attorney for Defendants, Billy D. "Rusty"*
    *Rhoades, Michael Harrell, and Megan L.*
    *Simpson*

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Stanley M. Ward
Woodrow K. Glass
Barrett T. Bowers
Andrew M. Casey
S. Alex Yaffe

I also served a true and correct copy of the foregoing document to the following:

Devan Pederson
Assistant Attorney General
Oklahoma Attorney General's Office
313 N.E. 21st Street
Oklahoma City, Oklahoma 73105

               s/Garry M. Gaskins, II
               Garry M. Gaskins, II