## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

TROY D. GERMAN,                          )
                                         )
    Plaintiff,                   )
                                         )
-vs-                                     )    Case No. CIV-19-0751-F
                                         )
BILLY D. "RUSTY" RHOADES,                )
et al.,                                  )
                                         )
    Defendants.                  )

## ORDER

This action, brought under 42 U.S.C. § 1983, alleges violations of plaintiff Troy D. German's federal constitutional rights. Doc. no. 3 (first amended complaint, hereafter "the complaint"). Six motions remain to be determined, in full or in part. The court's rulings on the motions mean that most but not all of plaintiff's claims survive.

Before addressing the motions, it is helpful to begin with a summary of the allegations which, although not taken as true at this stage, provide context.

<u>Fact Allegations</u>

The complaint alleges that defendants, as current or former law enforcement officials, fabricated evidence to encourage a false blackmail charge against plaintiff after he blew the whistle on a cheating scandal within the highway patrol. The essential allegations may be summarized as follows:

-- Plaintiff is Troy D. German, the alleged whistleblower. He retired from the Oklahoma Highway Patrol at the rank of captain.

-- Defendants are Billy D. "Rusty" Rhoades, who resigned in lieu of termination from the position of Commissioner of the Oklahoma Department of Public Safety; Michael Harrell, who resigned in lieu of termination from his position as Chief of the Oklahoma Highway Patrol; Brian Orr, who is currently employed (as of the date the complaint was filed) as a Captain in the Oklahoma Highway Patrol; and Megan Simpson, who resigned in lieu of termination from her position as General Counsel and Chief of Administration with the Oklahoma Department of Public Safety.

-- On July 17, 2018, Orr received the questions, in advance, which would be on an upcoming promotional board interview (or test) to fill vacancies for the rank of captain.  Rhoades called Orr in the presence of Harrell, then handed the telephone to Harrell, who then provided Orr with the four questions that would be asked during the interview.

-- Orr told plaintiff what had occurred.  Plaintiff was concerned that Harrell and Orr had violated state law and patrol policies in addition to Oklahoma Highway Patrol ethics.

-- Plaintiff told (or communicated with) various people about the cheating scandal, including Rhoades, members of the General Staff of the Oklahoma Highway Patrol, two ministers, an elder from his church, an Oklahoma State Bureau of Investigation Agent, Oklahoma State Representative Mike Sanders, Oklahoma State Senator Roger Thompson, and Ashley Kehl who was the Chief of Staff of Oklahoma Senate President Pro Tempore Greg Treat.  Senator Treat informed former highway patrol trooper Chip Keating, who was later named Secretary of Public Safety and Security, about plaintiff's allegations.

-- On November 13, 2018, Rhoades was informed by Keating that plaintiff was blowing the whistle on corruption and violations of law within the Oklahoma Highway Patrol.

--    Also on November 13, 2018, Rhoades met with Department of Public Safety General Counsel Megan Simpson and disclosed his misdeeds.  To discredit plaintiff and save Rhoades' career, Simpson helped Rhoades concoct a false story about plaintiff blackmailing Rhoades.  In January of 2019, Rhoades promoted Simpson to the position of Chief of Administration.

--    After Simpson told Harrel that plaintiff had blown the whistle on the cheating scandal, Rhoades, Harrell and Simpson agreed, explicitly or implicitly, to participate in a conspiracy against plaintiff to allege that plaintiff had attempted to extort or blackmail Rhoades.  Rhoades, Harrell and Simpson met with Orr to coordinate their false stories.

--    On November 19, 2018, Rhoades and Harrell  met with Captain Jason Holt, Troop Z.  (Troop Z is the Criminal Investigations Division of the Oklahoma Highway Patrol.)  During the Troop Z investigation of the blackmail allegations, Rhoades falsely accused plaintiff of blackmail.  Rhoades, Harrell and Orr gave false information to Holt and other investigators.  Orr falsely denied that Harrell had provided Orr with the questions for the promotional board interview.  In a meeting arranged by Keating and Rhoades, Orr also provided false information to Governor-elect Stitt, falsely denying that he had cheated.

--    In December of 2018, Rhoades asked Oklahoma County District Attorney David Prater for a meeting.  When the meeting occurred, Rhoades appeared, accompanied by Harrell and Simpson.  Rhoades described his allegations of blackmail and asked Prater to file blackmail charges.  Simpson told Prater the allegations met the definition of blackmail.  Prater was incredulous.  He stated that if Rhoades believed plaintiff had committed blackmail, Rhoades should have the matter investigated, after which Prater would review and consider the matter. Rhoades stated he did not want to have the Oklahoma State Bureau of Investigation investigate the matter.  Prater stated that Rhoades could have Troop Z investigate.

Following the meeting, Prater contacted the office of the Oklahoma Attorney General and told them they should be skeptical of a potential charge against plaintiff.

-- On December 16, 2018, plaintiff confirmed a personal interview with Stitt for the position of Director of the Oklahoma Department of Emergency Management. The interview was scheduled for December 18, 2018. On December 17, 2018, members of the Oklahoma Highway Patrol conducted a search of plaintiff's residence and his person, seizing his personal phones and firearm. Members of the highway patrol also conducted several custodial interrogations of plaintiff, detaining him without an arrest warrant from early morning until late afternoon.

-- After Prater declined to file charges against plaintiff, Rhoades, Harrell and Simpson prevailed upon the Oklahoma Attorney General to use the Multi-County Grand Jury to investigate plaintiff.

-- On February 15, 2019,[1] plaintiff was indicted by the Oklahoma Multi-County Grand Jury on one count of blackmail in violation of 21 O.S. § 1488.[2] Following the indictment, plaintiff was seized and taken to the Oklahoma County Detention Center. On March 6, 2019, the state dismissed the indictment and re-filed the case by information.[3]

-- On June 28, 2019, the state dismissed the blackmail charge, prior to the preliminary hearing.

<u>The Claims</u>

Based on the above allegations, the complaint alleges four claims. The claims are brought against all four defendants, in their individual capacities only. They are:

---

[1] The complaint alleges the date of the indictment was February 14, but the indictment indicates it was filed on February 15.

[2] Doc. no. 33-7 (indictment).

[3] Doc. no. 33-8 (information).

-- A § 1983 retaliatory prosecution claim under the First Amendment;

-- A § 1983 malicious prosecution claim under the Fourth Amendment;

--  A § 1983 abuse of process claim under the Fourth Amendment; and

-- A § 1983 conspiracy claim based on allegations that defendants conspired to violate plaintiff's rights protected by the First and Fourth Amendments.

The Motions

This order addresses the pending motions in the following sequence.

Part I:  Rhoades, Harrell and Simpson's motion to reconsider and vacate order of November 24, 2020.  Doc. no. 82.  Plaintiff's response brief, doc. no. 97. Rhoades, Harrell and Simpson's reply brief, doc. no. 99.

Part II:  The remaining portion of Orr's motion for summary judgment.  Doc. no. 64; exhibits at doc. no. 65.  (The court's order of November 24, 2020 ruled on some but not all arguments made in this motion.)  Plaintiff's response brief, doc. no. 88 (unredacted version at doc. no. 89).  (Doc. no. 88 does not include doc. no. 88-9, which is a sealed exhibit found at doc. no. 89-1.)  Orr's reply brief, doc. no. 96.

Plaintiff's motion to strike inadmissible hearsay evidence attached by Orr to his motion for summary judgment.  Doc. no. 98.  Orr's response brief, doc. no. 105. No reply brief was filed.

Part III:   The remaining portion of Rhoades, Harrell and Simpson's motion for summary judgment.  Doc. no. 33.  (The court's order of November 24, 2020 ruled on some but not all arguments made in this motion.)   Plaintiff's supplemental response brief, doc. no. 87 (addressing the remaining issue).  Rhoades, Harrell and Simpson's reply to plaintiff's supplemental response brief, doc. no. 93.

Part IV:  Plaintiff's motion to compel the Oklahoma Attorney General to produce state grand jury materials.  Doc. no. 52.  Rhoades, Harrell and Simpson's response brief, doc. no. 67.  Orr's response brief, doc. no. 72.  Attorney General's response brief, doc. no. 73.  Plaintiff's reply to Rhoades, Harrell and Simpson's response brief, doc. no. 71.  Plaintiff's reply to Attorney General's response brief, doc. no. 77.  Plaintiff did not reply to Orr's response brief.

Part V:  Rhoades, Harrell and Simpson's motion to exclude David Prater from providing expert testimony regarding probable cause, and to exclude Prater from offering opinions regarding the believability of Rhoades.  Doc. no. 62.  Plaintiff's response brief, doc. no. 76.  No reply brief was filed.

## Part I

### *(Doc. no. 82)*

Rhoades, Harrell and Simpson move the court to reconsider and vacate its order of November 24, 2020 (doc. no. 78), to the extent that order denied these defendants' motion for summary judgment on the § 1983 retaliatory prosecution claim, the § 1983 malicious prosecution claim, and the § 1983 conspiracy claim. Rhoades, Harrell and Simpson argue that the fact of plaintiff's indictment on the blackmail charge, in and of itself, establishes probable cause for that crime, entitling them to summary judgment on the listed claims.  Based on this argument, and the related argument that plaintiff has not provided admissible evidence to rebut the presumption of probable cause defendants contend was created by the issuance of the indictment, defendants move the court to reconsider its denial of summary judgment on these claims.  The motion will be denied for several reasons.

First, the argument which Rhoades, Harrell and Simpson now urge was not made in their motion for summary judgment. (Their motion for summary judgment argued that plaintiff's confession to the elements of blackmail established probable cause.)  They try to skirt this problem, stating they met their initial burden of showing

6

probable cause at the summary judgment stage "simply by attaching a copy of the Indictment by the Grand Jury to their Motion for Summary Judgment." Doc. no. 82, p. 3.[4] [5]   But attaching an indictment is not a substitute for argument about the indictment's impact on the claims.   Rhoades, Harrell and Simpson are not entitled to reconsideration of the court's order on summary judgment based on an argument they did not make at the summary judgment stage.   And they cannot complain about plaintiff's failure to identify evidence to rebut an argument they did not make.

Second, the argument which Rhoades, Harrell and Simpson now urge would not have succeeded if it had been made in their motion for summary judgment.   At the motion to dismiss stage, defendants argued that the indictment insulates law enforcement officers from later civil rights malicious prosecution suits.   The court rejected that argument, citing Robinson v. Maruffi, 895 F.2d 649 (10th Cir. 1999). Doc. no. 13, p.14.   Robinson is a civil rights action brought against police officers for their alleged involvement in a malicious prosecution conspiracy.   Robinson reasons that the acts of the prosecutor or grand jury were not an intervening break from the conduct of the defendants, as the prosecutor and grand jury had relied on the falsified statements of the defendants.   Id. at 656.   Robinson states:

> [A] prosecutor's decision to charge, a grand jury's decision to indict, and a prosecutor's decision not to drop charges but to proceed to trial—none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision…. If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him.

---

[4] The fact that plaintiff was indicted on one count of blackmail is set out in Rhoades, Harrell and Simpson's motion for summary judgment, doc. no. 33, fact no. 11 (undisputed).

[5] Except where otherwise noted, this order uses documents' original page numbers rather than the electronic case filing (ecf) page numbers.

> *They cannot hide behind the officials whom they have defrauded.*

*Id.*, quoting <u>Jones v. City of Chicago</u>, 856 F.2d 985, 994 (7th Cir. 1988), emphasis in <u>Robinson</u>.

Third, to the extent defendants seek reconsideration based on complaints about the timing of the court's order on summary judgment, their arguments are also rejected. Defendants argue the court acted prematurely when it denied summary judgment as defendants had not yet had a chance to file a reply brief. But no reply brief could have legitimately expanded the arguments for summary judgment to include new arguments which were not made in the original motion (such as a new argument that the indictment, itself, establishes probable cause). Defendants also complain about the court's statement in its ruling on summary judgment that "even without consideration of German's response brief," it was clear defendants' arguments "cannot carry the day." *See*, doc. no. 78, p. 5, n.4. That statement was not intended to suggest that the court did not review the response brief before it ruled. (It did.) The purpose of the statement was simply to assure defendants there was no need for them to file a reply brief because the court's ruling did not depend on anything argued in the response brief. Nor did the response brief open the door to the new issue which defendants now make in their motion for reconsideration.

The motion for reconsideration will be denied.

<u>Part II</u>

*(Doc. nos. 64, 98)*

The court's November 24, 2020 order ruled on part of Orr's motion for summary judgment. Doc. no. 64 (motion), doc. no. 78 (order). Orr's remaining arguments for summary judgment are found in proposition III of Orr's motion, at sections A, C, D, E and G. Only one argument remains for determination in section E.

Summary Judgment Standards

Under Rule 56, Fed. R. Civ. P., summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant.  United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996).  Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial.  Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).  The mere existence of a scintilla of evidence in support of the plaintiff's position is insufficient to avoid a properly supported summary judgment motion; there must be evidence on which the jury could reasonably find for the plaintiff.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

While at the summary judgment stage evidence need not be submitted in a form that would be admissible at trial (for example, it may be submitted in the form of affidavits, even though affidavits are often inadmissible at trial as hearsay), the content or substance of the evidence must still be admissible.  Argo v. Blue Cross and Blue Shield of Kansas, Inc., 452 F.3d 1193, 1199 (10th Cir. 2006), quotations and citations omitted.  Thus, at the summary judgment stage, the court should disregard inadmissible hearsay statements contained within affidavits or within depositions, as those statements could not be presented at trial.  Id.

Proposition III.A.  Orr argues he enjoys absolute immunity for his grand jury testimony and that this immunity entitles him to summary judgment on all claims because the "the only thing that could conceivably justify a suit against Defendant Orr revolves around his grand jury testimony." Doc. no. 64, p. 17.  Orr argues that other than testifying before the grand jury, the only conduct potentially relevant to this action is his alleged cheating and his alleged denial that he cheated.  He argues that a claim cannot be stated against him based on cheating or denial of cheating, leaving his grand jury testimony as the only conduct available to support plaintiff's claims.

Plaintiff does not contest Orr's contention that he is entitled to immunity for his grand jury testimony.  As stated in Rehberg v. Paulk, 566 U.S. 356, 369 (2012):

> [W]e conclude that grand jury witnesses should enjoy the same immunity as witnesses at trial.  This means that a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony.  In addition…this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution.  Were it otherwise, a criminal defendant turned civil plaintiff could simply reframe a claim to attack the preparation instead of the absolutely immune actions themselves.

Id. at 369, quotations and citations omitted.

Plaintiff argues he can prove his claims against Orr without relying on Orr's grand jury testimony, citing Coggins v. Buonora, 776 F.3d 108 (2d Cir. 2015).  Coggins states that:

> When a police officer claims absolute immunity for his grand jury testimony under Rehberg, the court should determine whether the plaintiff can make out the elements of his § 1983 claim without resorting to the grand jury testimony.  If the claim exists independently of the grand

> jury testimony, it is not "based on" that testimony, as that term is used in <u>Rehberg</u>.  Conversely, if the claim requires the grand jury testimony, the defendant enjoys absolute immunity under <u>Rehberg</u>.

*Id*. at 113, citation omitted.

As set out below, plaintiff cites evidence intended to show, either directly or by inference, that Orr was a knowing participant in a scheme to falsely accuse plaintiff of blackmail, leading to charges.

-- There is evidence that Orr cheated but lied about having done so when the blackmail matter was under investigation by the highway patrol (Troop Z investigators), and that Orr gave false information to investigators and others as part of an effort among the defendants to further a false blackmail charge against the plaintiff.

-- There is evidence that Orr and other defendants met to coordinate their false stories.  They met after Rhoades learned plaintiff had contacted Senator Greg Treat's office and exposed the cheating scandal.  There is evidence from which a jury could infer that there was no legitimate reason for such a meeting.

-- There is evidence that when Orr made false statements to Troop Z investigators, he was aware his statements would encourage criminal charges against plaintiff.  An Oklahoma Highway Patrol Investigation report issued as part of the Troop Z investigation indicates that after Orr was made aware of the existence of audio recordings made by plaintiff, Orr told the investigator (Captain Jason Holt): "So… and again y'all bear with me here as I try to navigate through this – what I'm trying to say.   He's (GERMAN) done something criminal.  I haven't.  Let me

rephrase that, he potentially has done something criminal, correct?  I haven't."[6]  Doc. no. 89-1 at p. 5 (ecf page number).  The same report characterizes various statements attributed to Orr as "a blatant lie," "untruthful," "untruthful and a misrepresentation of the facts" or "not truthful."  *Id*. at pp. 2, 3, 7, 8, 9, 10 (ecf page numbers).

-- There is evidence from which the jury could infer that false statements given by Orr and others to the Troop Z investigators infected the grand jury proceedings.  In plaintiff's response to Rhoades, Harrell and Simpson's motion for summary judgment, plaintiff cites evidence that Holt (assigned to investigate the criminal allegations against plaintiff) testified before the grand jury.  Plaintiff also cites evidence to show the Troop Z file contained Rhoades' written statement, which contained falsehoods,[7] and that the Troop Z file or its contents infected the grand jury proceedings.  For example, Assistant Attorney General Dane Towery (the prosecutor) was told by his multi-county grand jury team that "[W]e're just going to call Troop Z and they're going to lay out the investigation." Doc. no. 37-2, p. 77.

-- There is evidence that Orr, together with Rhoades and Harrell, made false statements to Keating with the intention that the false information reach the governor.  Keating testified that Rhoades, Harrell and Orr called him, "the three of them together," in either early January [of 2019] or late December [of 2018], to explain their side of the story.  Doc. no. 88-8, p. 32.  Keating testified to his impression that Orr, Rhoades and Harrell were nervous the governor might "go a

---

[6] The OHP Investigation Supplemental Form at doc. no. 89-1 is sealed pursuant to the parties' agreed protective order. For purposes of this order only, the court presumes the Oklahoma Highway Patrol's Investigation Reports are admissible under Rule 803(8)(A)(iii), Fed. R. Evid., regarding a record of a public office with fact findings from a legally authorized investigation. No party argues otherwise at this stage, and both Orr and plaintiff cite the reports. That said, Orr's statements quoted above, in the text of this order, are not considered for the truth of the matters Orr there asserts.

[7] *See*, doc. no. 37, plaintiff's additional fact nos. 2-3 at p. 10, detailing alleged falsehoods in Rhoades' written statement given to Troop Z investigators.

different direction" with an appointment. *Id*. Keating testified that Rhoades, Harrell and Orr were trying to explain why the information Keating and others were reading and hearing about the cheating scandal was false. *Id*.

-- On February 15, 2019, the multi-county grand jury indicted plaintiff on one count of blackmail.

Plaintiff has identified sufficient evidence of conduct by Orr outside of Orr's grand jury testimony, to avoid Orr's claim of absolute immunity. This immunity argument is rejected as a basis for summary judgment.

Proposition III.C.  Orr argues he is entitled to summary judgment on the §1983 malicious prosecution claim because this claim requires proof that the blackmail case terminated in plaintiff's favor and plaintiff can identify no such evidence. Orr argues that voluntary dismissal of a prosecution by the government is not a favorable termination in the sense required for a malicious prosecution claim under § 1983. In addition, he argues that the blackmail case was dropped by agreement (with plaintiff resigning from the highway patrol in exchange for dismissal of the blackmail charge) so that there was no favorable termination.

To state a § 1983 claim for malicious prosecution, a plaintiff must show: (1) the defendant caused plaintiff's continued confinement or prosecution; (2) the original action terminated in plaintiff's favor; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) plaintiff sustained damages. Montoya v. Vigil, 898 F.3d 1056, 1066 (10th Cir. 2018), quoting Wilkins v. DeReyes, 528 F.3d 790, 799 (10th Cir. 2008). It is the second element—termination of the blackmail proceedings in favor of the plaintiff—that is in issue here.

When a case terminates based on an acquittal due to innocence, or when a court vacates a conviction because the defendant was factually innocent, then, a plaintiff who subsequently brings a § 1983 malicious prosecution case obviously

meets the favorable termination requirement.  *See*, <u>Montoya</u> at 1066, citing <u>Pierce v. Gilchrist</u>, 359 F.3d 1279, 1294 (10th Cir. 2004).  But when criminal proceedings terminate in some other way, "it is less obvious whether or not the termination demonstrates innocence," <u>Montoya</u> at 1066, citing <u>Cordova v. City of Albuquerque</u>, 816 F.3d 645, 654 (10th Cir. 2016).  "In fact, many times the disposition terminating a criminal proceeding does not on its face say anything at all about the plaintiff's guilt.  In those cases we 'look to the stated reasons for the dismissal as well as to the circumstances surrounding it in an attempt to determine whether the dismissal indicates the accused's innocence.'"  *Id.* at 1066, quoting <u>Wilkins</u>, 528 F.3d at 803.  "If, in view of the circumstances, 'the case [was] disposed of in a manner that leaves the question of the accused's innocence unresolved, there generally can be no malicious prosecution claim by the accused.'"  *Id.* at 1066, quoting <u>M.G. v. Young</u>, 826 F.3d 1259, 1262 (10th Cir. 2016).

A plaintiff's inability to demonstrate that the criminal charges were dismissed for reasons indicative of innocence is fatal.  As stated in <u>Young</u> at 1264, "Since Plaintiffs bear the burden of proof on this point, their inability to demonstrate that their convictions were vacated for reasons indicative of innocence is fatal to their malicious prosecution claims.  We thus conclude that the district court did not err in granting Defendants' motion for summary judgment on these claims [the §1983 malicious prosecution claims]."  In <u>Cordova</u>, another summary judgment case, the court of appeals affirmed the district court's grant of summary judgment after noting the general rule that malicious prosecution cases are disfavored at common law.  816 F.3d 645 at 653, citing <u>Hernon v. Revere Copper & Brass, Inc.</u>, 494 F.2d 705, 707 (8th Cir. 1974).  <u>Cordova</u> observed that the favorable termination requirement "serves as a useful filtering mechanism, barring actions that have not already demonstrated some likelihood of success."  *Id*. at 654.  "Nor, we should emphasize,

does a dismissal of charges create a presumption of innocence or shift the burden of proving the element of favorable termination to the defendant." *Id.*

Here, it is undisputed that the blackmail charge was dismissed by the state court.  The parties concur in this regard, and plaintiff has submitted the docket sheet for State of Oklahoma v. Troy D. German, CF-2019-967, In the District Court In and For Oklahoma County, Oklahoma.  Doc. no. 88-6.  The following information can be gleaned from the docket sheet, which is a public record.

-- Near the top of page 2 of the docket sheet, under the heading "Disposition Information," the following statement appears:  "Disposed:  dismissed, 06/28/2019.  Dismissed--Request of the State."

-- A preliminary hearing was scheduled at one point but was continued and never held.

-- The entry on 06-28-2019 states:  "Judge Savage:  The defendant appears in person with attorney M. Johnson.  The state appears by ADA Dane Towery.[8]  Case dismissed without prejudice/costs.  Court reporter waived."

--  The above language, "dismissed without prejudice," preserves the possibility that the state could recharge plaintiff later.

-- "Court reporter waived" indicates no transcript was made of the dismissal proceeding.

-- The 06-28-2019 entry also includes, in smaller typeface, the following statement, referring to Judge Savage's dismissal order:  "Document Available at Court Clerk's Office."  Judge Savage's dismissal order was not provided by either party.  That order, however, is a matter of public record as to which this court may take judicial notice.  The court has obtained a copy of the dismissal order, which is

---

[8] The court believes Towery is an assistant attorney general rather than an assistant district attorney.

attached to this order as "Court's Exhibit 1."   In the space for "Other reasons, Comments & Orders," the order states:   "Case D/M w/out prejudice/costs."   Thus, the dismissal order confirms the information on the docket sheet, including the fact that the dismissal was without prejudice. The dismissal order includes no other pertinent information.

-- A second docket entry on 06-28-2019 states: "Kathryn Savage, Judge:  Case Disposed.  Dismissed."

In summary, neither the docket sheet nor Judge Savage's dismissal order include any information about the prosecutor's reasons for asking the state court to dismiss the blackmail charge.  What *is* known, however, is that the blackmail charge was dismissed without prejudice.

In Oklahoma, a dismissal without prejudice of the underlying charge is not considered a termination in favor of the plaintiff.  As stated in Glasgow v. Fox, 757 P.2d 836 (Okla. 1988):   "[W]e hold that dismissal without prejudice of the underlying malpractice action was not a termination of the suit in appellant's favor which will support an action for malicious prosecution.   It did not reach the substantive rights of the cause of action and thereby vindicate appellant as to the underlying action."   *Id*. at 839.   Similarly, as stated in cases involving § 1983 malicious prosecution litigation, "If, in view of the circumstances, the case was disposed of in a manner that leaves the question of the accused's innocence unresolved, there generally can be no malicious prosecution."   Montoya, 898 F.3d 1056 at 1066, quoting Young.

Accordingly, the only conceivably remaining question is whether plaintiff has identified evidence of any circumstances that show the blackmail charge was disposed of in a manner that reflected plaintiff's innocence, despite the fact that the charge was dismissed, without prejudice, without further explanation by the presiding judge.  As explained below, plaintiff has identified no such evidence.

Plaintiff's additional fact nos. 3-4 (the evidence plaintiff cites repeatedly in his response brief to dispute Orr's contention that there was no favorable termination) do not show a favorable termination. Plaintiff's fact no. 3 (at doc. no. 88, p. 9) cites deposition testimony by District Attorney Prater, in which Prater testifies that Rhoades told Prater about conversations Rhoades had with plaintiff. Prater deposition, doc. no. 88-5, pp. 24, 28, 32-34. According to Prater's deposition, Prater, after summarizing Rhoades' statements back to Rhoades, stated "This isn't blackmail at all." *Id.*, p. 34. Prater also testified that based on "everything I've heard that day" (apparently referring to everything related to him by Rhoades) "this" (meaning the blackmail charge) "didn't pass the smell test. This stunk." *Id.* at p. 55. Later, Prater testified that "I told Dane Towery I felt like Troy German did not commit the act of blackmail," *id.* at 79. Towery is Assistant Attorney General Dane Towery, employed by the Oklahoma Attorney General's Office. He was the prosecutor on the blackmail charge, and he is the attorney who appeared before Judge Savage when the charge was dropped, as shown on the docket sheet.

Prater further testified at his deposition that he was being careful, in his position, not to influence lawyers, especially lawyers in other agencies. *Id.* at p. 76. Prater explained that he did not want Towery to think that he (Prater) was going to demand that Towery do this or that. *Id.* Prater testified that when he left the meeting with Towery, he did not know whether the charges would be dismissed or whether they would be dismissed at the preliminary hearing, but he had confidence the right thing would happen. *Id.* at 78.

Prater was not the prosecutor, and–importantly–he did not make the decision to drop the charge. Plaintiff cannot rely on Prater's feelings about whether plaintiff had committed blackmail to show that the blackmail charge terminated favorably for the plaintiff. Prater's feelings or beliefs on this topic would not support a jury verdict in plaintiff's favor on this issue.

The other evidence offered by plaintiff (in plaintiff's additional fact no. 4) to show favorable termination, relates to Rhoades' lack of consistency regarding the facts of the blackmail, and plaintiff's contention that Rhoades took no action on the blackmail charge until after Rhoades learned plaintiff had reached out to members of the state legislature and exposed the cheating scheme. The court of appeals has expressed skepticism about testimony relating to the credibility of a witness to the criminal proceedings, when that evidence is offered by a plaintiff in a § 1983 malicious prosecution case to show a favorable termination.[9] Plaintiff also relies on evidence which "expose[s] how Rhoades' allegations were viewed within other branches of state government at the time of dismissal," and the "belief" that the blackmail investigation was retaliatory. Doc. no. 88, p. 10. None of this evidence is sufficient to show or suggest a favorable termination.

As shown, the state court's records reveal only that, on the state's motion, the charge was dismissed without prejudice. A dismissal without prejudice is not a favorable termination in Oklahoma, and plaintiff has identified no circumstances that would support a different result here. There is no genuine dispute over the fact that the blackmail charge did not terminate favorably to the plaintiff in the sense required for a § 1983 malicious prosecution claim. For this reason, Orr's motion for summary judgment will be granted with respect to this claim.

This ruling makes it unnecessary to reach Orr's further argument, which is that the blackmail charge was dismissed based on an agreement between the parties to the blackmail charge (*i.e.* the prosecutor, Towery, as the attorney for the State of Oklahoma, and German as the defendant named in the charge). That argument, if it could be established based on first-hand, non-hearsay evidence, would provide an

---

[9] *See*, Young, 826 F.3d 1259, 1263 ("As an initial matter, we find no legal support for Plaintiffs' argument that evidence going to the reliability of a key witness necessarily proves the accused is actually innocent of the charges against her.")

alternative ground for ruling in favor of Orr on the § 1983 malicious prosecution claim. But it is not necessary to address that argument or the admissibility of the evidence offered by Orr to prove it. Accordingly, "Plaintiff's Motion to Strike Inadmissible Hearsay Evidence Attached by Defendant Orr in Support of his Motion for Summary judgment" will be stricken as moot. Doc. no. 98.

The court also finds that although Rhoades, Harrell and Simpson did not raise the "lack of a favorable termination" issue in their motion for summary judgment, they should have the benefit of the court's ruling on this issue. There is nothing that would distinguish their position from Orr's on this issue. Moreover, Rhoades, Harrell and Simpson raised this issue, albeit in a different context, in their brief filed in response to plaintiff's motion to compel the production of grand jury materials.

In that brief (doc. no. 67, pp. 3-4), Rhoades, Harrell and Simpson argue plaintiff has no need to compel grand jury records because the claim which plaintiff uses to justify his need for that material is the § 1983 malicious prosecution claim which cannot succeed as the blackmail charge did not terminate favorably to the plaintiff. Although plaintiff's reply (doc. no. 71) to that response brief notes that Rhoades, Harrell and Simpson did not raise this issue in their motion for summary judgment, plaintiff goes on to address their argument in his reply brief. There, plaintiff argues that this court, at the motion to dismiss stage, found that "numerous allegations plausibly show that the blackmail charge brought against plaintiff was dropped for reasons which indicate innocence or are inconsistent with guilt." Plaintiff at doc. no. 71, p. 5, quoting order on motion to dismiss, doc. no. 13 at p. 14.

Of course, the court's decision at the motion to dismiss stage depended on the allegations, not the evidence. The order which denied dismissal cited ¶¶137-38 of the complaint. Doc. no. 13, p. 14. Paragraph 137 alleges that Prater met with prosecutor Towery and relayed Prater's belief that Rhoades was lying and that the only potential crimes were committed by Rhoades and Harrell, and that Prater would

be testifying as a favorable witness for plaintiff at the upcoming preliminary hearing. Paragraph 138 then alleged: "The OAG [Oklahoma Attorney General] <u>therefore</u> dismissed the charges against CPT German <u>with the firm and definite conviction that CPT German was innocent</u>."  Doc. no. 3, ¶ 138 (emphasis added).  Plaintiff has identified no evidence to support the allegation set out in ¶ 138.  There is no evidence from the prosecutor (Towery) or from Oklahoma Attorney General Mike Hunter  or from any first-hand, non-hearsay source, that the blackmail charge was dismissed because the Oklahoma Attorney General had a firm and definite conviction that plaintiff was innocent.

Plaintiff's reply brief on the motion to compel also argues that Rhoades, Harrell and Simpson's contention that there was not a favorable termination strains credulity.  The gist of plaintiff's argument seems to be that prosecutors do not dismiss charges they think they can prove.  But there is nothing inherently unbelievable about a dismissal of a charge without prejudice (all the more so if the dismissal occurred around the time plaintiff resigned from the highway patrol, a fact about which the court makes no finding because the record is not clear in that regard).

In short, although Rhoades, Harrell and Simpson did not seek summary judgment on the § 1983 malicious prosecution claim on the ground that the blackmail charge did not terminate favorably for the plaintiff, plaintiff has had a full opportunity to persuade the court that there is a triable issue with respect to this issue, both in response to Orr's motion for summary judgment and in response to Rhoades, Harrell and Simpson's argument related to plaintiff's motion to compel.  Having considered all of plaintiff's arguments on this topic, the court finds those arguments fall short.  Accordingly, Orr, as well as Rhoades, Harrel and Simpson, are entitled to summary judgment on the § 1983 malicious prosecution claim.

This ruling also impacts the § 1983 conspiracy claim.  To recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy but also an actual deprivation of rights.  Dixon v. City of Lawton, Oklahoma, 898 F.2d 1443, 1449 (10th Cir. 1990).  This is because the essence of a § 1983 conspiracy claim is the deprivation of the right rather than the conspiracy. *Id.*  As the § 1983 malicious prosecution claim is out of the case, it follows that the conspiracy claim is out to the extent that it is based on an alleged conspiracy to maliciously prosecute plaintiff in violation of the Fourth Amendment.  On the other hand, the conspiracy claim survives to the extent that it is based on an alleged conspiracy to retaliate in violation of the First Amendment or to abuse process in violation of the Fourth Amendment.

Proposition III.D.  Orr's brief separates his qualified immunity arguments into two propositions, III.D. and III.G.  This order addresses these arguments together, in its discussion of proposition III.G.

Proposition III.E.  The only argument for summary judgment made in proposition III.E. that has not yet been ruled on, is Orr's argument that the § 1983 abuse of process claim fails because plaintiff is unable to point to evidence that Orr issued any process related to plaintiff.

State law provides the starting point for the elements of a § 1983 abuse of process claim. *See*, Erikson v. Pawnee County Bd. of County Comm., 263 F.3d 1151, 1154-55, n.5 (10th Cir. 2001) (state law provides elements for a claim of abuse of process under § 1983, citing Callaway v. Parkwood Village, LLC., 1 P.3d 1003, 1004 (Okla. 2002), which cites Greenberg v. Wolfberg, 890 P.2d 895, 905 (1994), for elements under Oklahoma law); Pierce v. Gilchrist, 359 F.3d 1279 at 1290 (common law principles are useful in giving structure to constitutional claims under § 1983 and thus serve as a starting point).  Greenberg describes the elements of abuse of process, under Oklahoma law, as follows:  1) the improper use of the court's

process; 2) primarily for an ulterior or improper purpose; 3) with resulting damage to the plaintiff who asserts the misuse. *Id*. at 905. Greenberg states that the party who asserts the abuse of process claim is not required to prove that the underlying action was brought without probable cause or that he prevailed in that proceeding. *Id*. Greenberg also explains that the tort of abuse of process lies for a perversion of process which occurs *after* the process in question has issued. *Id*. at 906 (emphasis in original).

Orr argues that he is entitled to summary judgment on the § 1983 abuse of process claim because "there is no evidence that [he] issued any process related to German." Doc. no. 64, p. 25.[10] Orr argues he did not issue the indictment, which was issued by the Seventeenth Multi-County Grand Jury, and that the subsequent information was not filed by him but by the Oklahoma Attorney General's Office. He argues that merely encouraging a governmental entity to bring a claim against another party (which he denies doing) is not the issuance of process. *Id*. Orr cites Sturgeon v. Retherford Publications, 987 P.2d 1218 (Okla. Civ. App. 1999), for his position.

The court rejects Orr's argument for summary judgment on the § 1983 abuse of process claim. Section 1983 imposes liability on a government official who "subjects, or causes to be subjected, any citizen … to the deprivation of any rights…." 42 U.S.C. §1983 (emphasis added). Thus, anyone who causes any citizen to be subjected to a constitutional deprivation is liable. Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012), quoting Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006). The causal connection is satisfied if defendant set in motion a series of events

---

[10] Orr also argues that "participating as a subpoenaed witness is not the issuance of 'process.'" Doc. no. 64, p. 25. The court agrees. *See*, discussion, *supra* (grand jury testimony cannot serve as the basis of a civil claim against the witness). Plaintiff does not rely on Orr's grand jury testimony as "process" for purposes of the § 1983 abuse of process claim.

that defendant knew or reasonably should have known would cause others to deprive plaintiff of his constitutional rights.  *Id*.  For these and other reasons, <u>Sturgeon</u>, even if interpreted in the manner plaintiff interprets it, does not control.[11]

The fact that Orr, himself, did not issue the indictment or file the information is not a basis for summary judgment on the § 1983 abuse of process claim. Accordingly, this argument for summary judgment is rejected.

<u>Propositions III.D.,G.</u>  In these propositions Orr asserts qualified immunity on two, narrow grounds.  Plaintiff has responded to both arguments.

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  To prevail against a defendant who asserts a defense of qualified immunity, a plaintiff must show (1) that the official violated a constitutional or statutory right, and (2) that the constitutional or statutory right was clearly established when the alleged violation occurred.  Thus, when qualified immunity is properly raised, it becomes plaintiffs' burden to convince the court that defendant is not entitled to qualified immunity.  <u>Lutz v. Weld County School District No. 6</u>, 784 F.2d 340, 342-43 (10th Cir. 1986).  That said, when a defendant moves for summary judgment based on qualified immunity, the court still views the facts in the light most favorable to plaintiff as the non-moving

---

[11] <u>Sturgeon</u> (which has not been endorsed by the Oklahoma Supreme Court) addresses the elements of the state tort of abuse of process.  It cannot trump § 1983's provision that a person who "subjects, or causes to be subjected" any citizen to a deprivation of rights, may be liable under § 1983.  *See also*, <u>Pierce v. Gilchrist</u>, 359 F.3d  at 1292 (§ 1983, by its terms, applies not only to a person who subjects, but also to any person who causes to be subjected any citizen to a deprivation of rights secured by the Constitution; this suggests Congress was concerned not just with the officer who formally initiates the process in a § 1983 malicious prosecution claim, but with all those who are the cause of deprivations of constitutional rights).

party and resolves all factual disputes and reasonable inferences in plaintiff's favor. Estate of Booker v. Gomez, 745 F.3d 405, 411 (10th Cir. 2014).

Proposition III.D. is entitled "Qualified Immunity Protects Defendant Orr's Testimony Because It was Reasonably Believable That Probable Cause Existed for the Crime of Blackmail." Doc. no. 64, p. 23. In this proposition, Orr argues he is entitled to qualified immunity because there was "arguable probable cause," citing Cortez v. McCauley, 478 F.3d 1108, 1121 (10th Cir. 2007). In proposition III.G., Orr asserts qualified immunity specifically for purposes of the § 1983 malicious prosecution claim.[12] He argues that the grand jury's "independent" decision to indict plaintiff on the blackmail charge, and the fact that on four occasions a magistrate judge found probable cause existed for a search warrant, entitle Orr to qualified immunity on this claim.

The court takes up proposition III.G. first, in which Orr asserts qualified immunity on the § 1983 malicious prosecution claim based on his contention that the indictment and issuance of search warrants insulate him from liability.[13] This order has already determined that all defendants are entitled to summary judgment on the § 1983 malicious prosecution claim because plaintiff has not identified evidence to meet the favorable termination element. Accordingly, plaintiff cannot carry his burden at the first step of the qualified immunity analysis to show that Orr violated the constitutional right in question. Orr is therefore entitled to qualified immunity on the § 1983 malicious prosecution claim. (This is an alternative basis for summary judgment in Orr's favor on this claim.)

---

[12] Orr argues that "Under precedent, a grand jury's independent decision to indict based on all available evidence insulates law enforcement officers in later civil rights malicious prosecution suits." Doc. no. 64, p. 28. Near the end of this proposition Orr argues "the malicious prosecution claims should be dismissed." Id. at p. 29.

[13] In part I of this order, addressing the motion for reconsideration, the court rejected Rhoades, Harrell and Simpson's argument that the indictment insulates them from liability.

Moving on to proposition III.D., this proposition does not identify to which of plaintiff's claims it pertains.   That said, this proposition relates to plaintiff's inability to prove that probable cause was lacking for the blackmail charge.   This argument could potentially relate to the § 1983 malicious prosecution claim or the §1983 retaliation claim, both of which require proof that probable cause was lacking.[14]   This order has found that Orr is entitled to summary judgment, and to qualified immunity, on the §1983 malicious prosecution claim.   Consequently, it is only necessary to address proposition III.D. in relation to the §1983 retaliation claim.

Proposition III.D. asserts that Orr is entitled to qualified immunity because there was "arguable probable cause" for the blackmail charge, citing Cortez, 478 F.3d 1108 at 1121.[15]   The arguable probable cause standard has been viewed as a different way to articulate the clearly established law prong of the qualified immunity analysis for purposes of a § 1983 claim based on a warrantless arrest.[16] As stated in Cortez, "[W]hen a warrantless arrest or seizure is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff."   Id. at 1120 (emphasis added).   The § 1983 retaliation claim is not based on a warrantless arrest.   Nor would it make sense to apply the "arguable probable cause" doctrine here, given allegations that defendants falsified evidence.[17]   To the extent Orr

---

[14] This argument is also relevant to the § 1983 conspiracy claim, to the extent the conspiracy claim is premised on deprivation of these rights.

[15] Orr also mentions "arguable probable cause" briefly in proposition III.G., citing an unpublished case.  Doc. no. 64, p. 29.

[16]"As a practical matter, we implement this [clearly-established-law] standard by asking whether there was 'arguable probable cause' for an arrest—if there was, a defendant is entitled to qualified immunity."  A.M. v. Holmes, 830 F.3d 1123, 1139 (10th Cir. 2016), (brackets in Holmes).

[17] In McIntyre v. Unified Gov't of Wyandotte County, 2020 WL 1028303 (D. Kan. March 3, 2020), the court explained that officers could not have reasonably believed probable cause existed,

intended to assert that "arguable probable cause" entitles him to qualified immunity on the § 1983 retaliation claim, the court rejects that argument.

Given the pointed nature of Orr's "arguable probable cause" argument set out in proposition III.D., which the court has not rejected, it is not obvious to the court whether it is fair to hold plaintiff to the usual obligation at this stage, which requires a plaintiff, in response to a proper assertion of qualified immunity, to 1) identify a constitutional deprivation by Orr, 2) based on law that was clearly established at the time of the deprivation. Nevertheless, in case plaintiff should be held to that burden, the court will address these issues for purposes of the § 1983 retaliation claim.

1. Constitutional deprivation.

In Worrell v. Henry, 219 F.3d 1197 (10th Cir. 2000), the court of appeals addressed the elements of a § 1983 retaliation claim. "We have stated that any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom. We have required proof of the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." Id. at 1212. In addition, plaintiff must prove the absence of probable cause for the prosecution (here, of the blackmail charge). Becker v. Kroll, 494 F.3d 904, 925 (10th Cir. 2007).

---

given allegations that they participated in the fabrication of evidence. Id. at *16, n.16. The court stated the "arguable probable cause" standard is a different way to articulate the clearly established prong of the qualified immunity analysis in the context of a warrantless arrest. Id. Because plaintiff was asserting a § 1983 malicious prosecution claim, his warrantless arrest was not at issue and the "arguable probable cause" standard did not apply.

Tracking the elements of this claim, there is evidence from which the jury could find:

-- That plaintiff was engaged in a constitutionally protected activity (there is evidence plaintiff blew the whistle on cheating within the highway patrol);

-- That Orr's actions caused plaintiff to suffer an injury which would chill a person from continuing to engage in that activity (there is evidence Orr promoted false narratives that led to the filing of a false blackmail charge against plaintiff; that Orr gave false information to investigators by denying cheating and by pushing Rhoades' false blackmail allegations; that as a result of Orr's and the other defendants' conduct, neither the Troop Z investigation nor the prosecutor had complete information about the blackmail allegations);

-- That Orr's action was substantially motivated as a response to plaintiff's exercise of constitutionally protected conduct (there is evidence Orr and other defendants met immediately after they became aware plaintiff had blown the whistle;[18] there is evidence from which the jury could infer there was no legitimate need for this meeting and the purpose was to align their stories); and

-- That probable cause was lacking for the blackmail charge (there is evidence Orr and the other defendants promoted a false narrative to support the blackmail charge; that plaintiff wanted to see change in the promotional process as he contended promotions needed to go to "legitimate leaders" and not "buddies;" that plaintiff did not demand to be promoted to major and did not give the commissioner names of people who needed to be promoted).[19] [20]

---

[18] Doc. no. 88-3, pp. 77-80.

[19] Doc. no. 88-2, pp. 27, 31-32.

[20] In its earlier order on summary judgment, the court rejected Orr's argument that probable cause was established because Orr contended plaintiff had confessed to the elements of blackmail. The existence or lack of probable cause remains in issue, to be determined by the jury.

Plaintiff has identified evidence of a deprivation of plaintiff's constitutional rights, by Orr, for purposes of the § 1983 retaliation claim.

2.   Clearly established law.

Plaintiff cites <u>Becker v. Kroll</u>, 494 F.3d 904 (10th Cir. 2007), to support his §1983 retaliation claim.[21]   <u>Becker</u>, like this action, involves a § 1983 retaliation claim for violation of the First Amendment.  In that case, Taj Becker contended criminal charges had been filed against her due to her public denunciations of Utah's Medicaid Fraud Control Unit.  To the extent relevant here, the action included claims against officials who had not made the decision to prosecute her but who had allegedly influenced that decision.

<u>Becker</u> cites <u>Hartman v. Moore</u>, 547 U.S. 250 (2006), for the proposition that "a defendant may proceed in a retaliatory prosecution action against an official 'who may have influenced the prosecutorial decision but did not himself make it, and the cause of action will not be strictly for retaliatory prosecution, but for successful retaliatory inducement to prosecute.'"  <u>Becker</u>, 494 F.3d at 925, quoting <u>Hartman</u>, 547 U.S. at 261-62, n.8.  After setting out the elements of a § 1983 retaliation claim, <u>Becker</u> states, "We believe the record on appeal presents a possible inference of retaliatory action."  494 F.3d at p. 926.  In support of that finding, the court noted there was evidence:  that some defendants were aware of the public criticism Becker had made about Utah's Medicaid Fraud Control Unit; that while the prosecutor was reviewing the charges, he discussed the investigation with some defendants; that these defendants may have withheld information about the investigation from the

---

[21] Plaintiff cites <u>Becker</u> in the portion of his brief that responds to Orr's absolute immunity argument (doc. no. 88, p. 15) rather than in the portion that responds to Orr's qualified immunity argument.  That is sufficient, especially as it is not clear whether Orr intended to assert qualified immunity for purposes of the § 1983 retaliation claim.

prosecutor; and that as a result, the prosecutor did not have complete information about the investigation before he made the decision to file charges.  *Id*.[22]

Plaintiff has identified clearly established law in support of the § 1983 retaliation claim against Orr.

For the reasons stated in this order, Orr is entitled to qualified immunity on the §1983 malicious prosecution claim but not on the § 1983 retaliation claim.

## Part III

### *(Doc. no. 33)*

The court's November 24, 2020 order ruled on part of Rhoades, Harrell and Simpson's motion for summary judgment.  Doc. no. 33 (motion), doc. no. 78 (order).  What remains to be addressed is these defendants' argument that the § 1983 abuse of process claim fails because there is no evidence these defendants issued any legal process related to plaintiff.  *See*, doc. no. 33, pp. 16-17.

The court has rejected this argument as made by Orr.  Rhoades, Harrell and Simpson make the same argument (almost verbatim).  Accordingly, for reasons stated in the court's discussion of Orr's proposition III.E., the court rejects Rhoades, Harrell and Simpson's remaining argument for summary judgment on the § 1983 abuse of process claim.

## Part IV

### *(Doc. no. 52)*

Plaintiff moves the court to compel the Oklahoma Attorney General to produce certain grand jury materials related to the blackmail charge.[23]  The Attorney

---

[22] The court of appeals remanded the retaliation claim for further consideration consistent with that order.  494 F.3d 904, 926.

[23] Plaintiff seeks records to the extent they relate to:  (1) Rusty Rhoades' false allegation that German sought a promotion or appointment in exchange for not revealing Rhoades, Harrell, and

General, as well as the defendants in this action, object to the motion on numerous grounds. However, defendants argue that if the court were to order production, the court should order production of all grand jury materials because the determination of probable cause will be based on what was presented to the grand jury after excluding any falsified inculpatory evidence and after including any withheld exculpatory evidence.

Plaintiff states that on August 19, 2020, he served the Attorney General with a subpoena to produce transcripts and exhibits from the grand jury proceedings. The Attorney General objected, arguing grand jury information is not public and may only be obtained by a criminal defendant while criminal charges are pending. Doc. no. 52-3. The Attorney General also indicated that a motion relating to grand jury secrecy should be made to the judge presiding over the multi-county grand jury. *Id*. Plaintiff then filed a motion in the District Court of Oklahoma County, seeking to unseal the records. The motion was heard on October 2, 2020. Doc. no. 52, p. 3. (Plaintiff states that he has not attached documents from the court proceedings because they are not public.) Plaintiff states that Judge Tim Henderson denied the motion, finding that Oklahoma law did not authorize the disclosure of grand jury materials when criminal charges were not pending. *Id*. at p. 3.

With the state court having denied production, plaintiff argues that this court has an independent obligation to determine, under federal law, whether the grand jury materials should be made available for purposes of this federal civil rights action.

The court of appeals has not determined whether, and if so pursuant to what standard, a federal court may order the release of state grand jury materials which a

---

Orr's cheating scheme that violated Oklahoma state law; and (2) the cheating scheme itself, particularly any admission or denial by Rhoades/Harrell/Orr that was relayed to the grand jury. Doc. no. 52, p. 3.

state court has found cannot be released under state law.[24]  Nevertheless, assuming for purposes of argument that such authority exists on some level, this court has no doubt that a movant's particularized need for the materials would be an important part of a court's determination regarding what, if any, grand jury documents should be produced.  As stated in In re Lynde, 922 F.2d 1448 (10th Cir. 1991), "Requiring a showing of particularized need impliedly requires the party seeking disclosure to demonstrate a specific and allowable use for the testimony.  A showing that the [grand jury] testimony would be relevant and helpful in a connected proceeding is not sufficient to meet this burden."  Id. at 1452.[25]

Plaintiff argues he has a particularized need for the materials.  Defendants argue he does not.  The Oklahoma Attorney General argues that plaintiff has "no compelling need for evidence of grand jury testimony."  Doc. no. 73, p. 5.  Accordingly, all involved agree that before this court could exercise any authority it might have to order release of the grand jury materials, plaintiff must show a particularized need for the materials.

The specific claim plaintiff relies on to justify his need for the grand jury materials is the § 1983 malicious prosecution claim.[26]  This order has found that defendants are entitled to summary judgment on this claim.  As a result, this claim

---

[24] In United States v. Tynan, 776 F.2d 250, 251 (10th Cir. 1985), after granting rehearing en banc, the court held that action could be decided without determining this issue, thereby avoiding questions under the Supremacy and Full Faith and Credit Clauses.  In doing so, Tynan stated, "We therefore neither disavow nor affirm the prior panel opinion, 757 F.2d 1085…."  The prior panel opinion had applied federal standards to determine when a federal court could obtain grand jury materials which were in the custody of a state court.

[25] In re Lynde addresses release of federal grand jury testimony sought for purposes of state court litigation.

[26] The portion of plaintiff's moving brief that addresses his arguments about particularized need refers to the malicious prosecution claim four times and identifies no other specific claims.  Doc. no. 52, pp. 8-9.

will not remain in this case going forward, and plaintiff has not shown a particularized need for the materials.  The motion to compel will be denied.

<u>Part V</u>

*(Doc. no. 62)*

Rhoades, Harrell and Simpson move to exclude Oklahoma County District Attorney David Prater's testimony to the extent plaintiff offers Prater as an expert witness to testify about the lack of probable cause for the blackmail charge.  The testimony in question relates to Prater's statements to defendants that Rhoades' allegations were not blackmail, and to Prater's statement to Towery that "I feel like Troy German did not commit the act of blackmail."  *See*, doc. no. 62-1 (email from counsel).  In addition, Rhoades, Harrell and Simpson move to exclude Prater's testimony, whether "elicit[ed] [as] either expert or lay opinion testimony from Prater," that Rhoades is lying or not believable.  Doc. no. 62, p. 6.

Plaintiff's response brief essentially concedes the motion with respect to any expert testimony that might be elicited from Prater regarding lack of probable cause or Rhoades' lack of credibility.[27]  This type of expert testimony would invade the province of the jury, and plaintiff indicates he does not intend to call Prater as an expert to testify on either of these topics (although plaintiff listed Prater on his expert witness list).  Accordingly, to the extent the motion seeks to exclude Prater as an expert witness on lack of probable cause or Rhoades' lack of credibility, the motion will be granted.

The trickier part of the motion is Rhoades, Harrell and Simpson's attempt to keep Prater from testifying to his opinion (his personal opinion or impression) as a

---

[27] *See*, <u>Cameron v. City of New York</u>, 598 F.3d 50, 61-62 (2d Cir. 2010) ("credibility of witnesses is exclusively for the determination by the jury, and witnesses may not opine as to the credibility of the testimony of other witnesses at trial"; "the issue of whether or not probable cause to arrest exists is a legal determination that is not properly the subject of expert opinion testimony").

<u>fact</u> witness, that Prater believed plaintiff had not committed blackmail, and that Prater believed Rhoades was not being truthful with him.  Plaintiff contends that Prater's testimony on these topics, when offered not as expert testimony but as fact testimony, is admissible on several grounds.  For example, plaintiff argues that after Prater expressed his skepticism about the blackmail charge to Rhoades, Rhoades ramped up his false accusations of blackmail.  These types of evidentiary issues should be determined at trial when Prater's proposed testimony as a fact witness can be evaluated within the context of the proceedings as a whole.  Accordingly, this aspect of the motion will be denied for now, without prejudice to reconsideration at trial.

To summarize, the motion to exclude will be granted to the extent it seeks to preclude Prater from testifying as an expert witness regarding:  probable cause (or lack of it) for the blackmail charge, or Rhoades' believability (or lack of it).  The motion will be denied without prejudice to *de novo* reconsideration at trial, to the extent it seeks to preclude Prater from testifying, as a fact witness, about his personal opinion or impression on these topics.

Conclusion

After careful consideration, the court rules as follows.

Rhoades, Harrell and Simpson's motion to reconsider and vacate the court's order of November 24, 2020 (doc. no. 82) is **DENIED**.[28]

The remaining portion of Orr's motion for summary judgment (doc. no. 64) is **GRANTED IN PART** and **DENIED IN PART**.  To the extent Orr seeks summary judgment on the § 1983 malicious prosecution claim, his motion is **GRANTED** because there is no evidence the blackmail charge terminated favorably to plaintiff.  The same ruling applies to the § 1983 malicious prosecution claim

---

[28] *See*, part I of this order.

33

alleged against Rhodes, Harrell and Simpson.  In addition, Orr is entitled to qualified immunity on this claim.  Accordingly, summary judgment is **GRANTED** to all defendants on the § 1983 malicious prosecution claim.  As a result, defendants are also entitled to summary judgment on the portion of the § 1983 conspiracy claim that is based on an alleged conspiracy to maliciously prosecute plaintiff.  In all other respects, the remaining portion of Orr's motion for summary judgment is **DENIED**.[29]

Plaintiff's motion to strike inadmissible hearsay attached to Orr's motion for summary judgment (doc. no. 98) is **STRICKEN** as moot.[30]

The remaining portion of Rhoades, Harrell and Simpson's motion for summary judgment (doc. no. 33), which argues that these defendants are entitled to judgment on the § 1983 abuse of process claim because they did not issue any legal process related to plaintiff, is **DENIED**.[31]

Plaintiff's motion to compel the Oklahoma Attorney General to produce state grand jury materials (doc. no. 52) is **DENIED**.[32]

Rhoades, Harrell and Simpson's motion to exclude David Prater's testimony on certain subjects (doc. no. 62) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent it seeks to preclude Prater from testifying as an expert witness regarding probable cause (or lack of it) for the blackmail charge, or Rhoades' believability (or lack of it).  The motion is **DENIED** without prejudice to *de novo* reconsideration at trial, to the extent that it seeks to preclude Prater from

---

[29] *See*, part II of this order.

[30] *See*, part II of this order.

[31] *See*, part III of this order.

[32] *See*, part IV of this order.

testifying, as a fact witness, about his personal opinion or impression on these topics.[33]

## The Surviving Claims

Based on the rulings made in this order and in the court's earlier, partial order on summary judgment, the following claims, which are alleged against all defendants, survive for trial:

> -- A § 1983 retaliatory prosecution claim under the First Amendment;
>
> -- A § 1983 abuse of process claim under the Fourth Amendment; and
>
> -- A § 1983 conspiracy claim based on allegations that defendants conspired to retaliate against plaintiff in violation of the First Amendment and/or to abuse process in violation of the Fourth Amendment.

## Status and Scheduling Conference

By separate order, this action will be set for a telephonic status and scheduling conference.  At the conference, this case will be put on a trial docket, and deadlines will be established for discovery completion and pre-trial filings.  *See*, doc. no. 69 (striking unexpired deadlines).

IT IS SO ORDERED this 17th day of February, 2021.



STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

19-0751p020 rev_.docx

---

[33] *See*, part V of this order.