IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TROY D. GERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. CIV-19-751-F |
| v. | ) | |
| | ) | |
| BILLY D. "RUSTY" RHOADES, individually; | ) | |
| | ) | |
| MICHAEL HARRELL, individually; | ) | |
| | ) | |
| BRIAN ORR, individually; | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| MEGAN SIMPSON, individually, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION TO COMPEL ON THE ISSUE OF ATTORNEY-CLIENT PRIVILEGE AND MOTION FOR LEAVE TO CONDUCT SECOND DEPOSITION OF DEFENDANT RHOADES**

**COMES NOW** Plaintiff Troy D. German and respectfully submits the following Motion to Compel on the Issue of Attorney-Client Privilege and Motion for Leave to Conduct Second Deposition of Defendant Rhoades. In support thereof, German would show the Court as follows:

**LCvR37.1 Certification**

I, Barrett T. Bowers, counsel of record for Plaintiff Troy D. German, hereby certify that I have conferred in good faith with counsel for Defendants Rusty Rhoades, Michael Harrell, and Megan Simpson in order to resolve the differences presented by this motion. I had a telephone conversation with Garry Gaskins on January 6, 2021 along with

1

subsequent email communications to clarify the defendants' position. A personal meeting

was infeasible due to the distance between counsel's offices (more than 30 miles).

German's counsel offices at 1611 N. Broadway Avenue, Oklahoma City, Oklahoma 73103.

Rhoades' counsel offices at 1500 S. Utica Ave., Tulsa, Oklahoma 74104. See LCvR37.1.

Despite my sincere attempt to resolve the issues presented by this Motion, the parties could

not reach any agreement about the issues raised by this Motion.[1]

## Introduction

During his deposition, Defendant Rusty Rhoades invoked the attorney-client

privilege and refused to disclose the substance of "any conversations that he had with

Megan Simpson when they were both still employed by the State." See Exhibit 1, Excerpt

from Deposition of Rusty Rhoades at 43:2-5. Rhoades' conversations with Simpson when

they were both employed by DPS are not protected by the attorney-client privilege. First,

the attorney-client privilege cannot shield communications that are made to further a crime

or fraud. Here, German has set forth substantial evidence showing that Rhoades was

engaged in a crime or fraud when he communicated with Simpson about (1) the cheating

scheme, or (2) the false blackmail allegation. Accordingly, the attorney-client privilege

cannot shield these communications. Second, the attorney-client privilege does not protect

these communications because the communications were never intended to remain

confidential. The ostensible purpose of these communications was to initiate a criminal

---

[1] Counsel for the RHS Defendants indicated that Megan Simpson would not assert the privilege over communications made in her capacity as supervisor over the Troop Z investigation into Troy German. However, there has been no clear indication of where they intend to draw this line.

investigation where Rhoades would (and did) reveal his allegations to third parties. Finally,

Rhoades, Harrell, and Simpson have placed the communications at issue both in this

litigation and in their own separate lawsuit against Governor Stitt and others. They may

not use the privilege as both a sword and a shield. For these reasons, the Court should find

that the defendants have not met their burden to establish that the privilege applies.

German also requests an opportunity to conduct a second deposition of Rhoades for

the limited purpose of inquiring into the substance of his communications with Simpson.

There is good cause for this second deposition given the defendants' baseless assertion of

privilege.

German would show the Court as follows:

<u>Argument and Authorities</u>

**PROPOSITION I**

**THE COMMUNICATIONS AT ISSUE ARE NOT PROTECTED BY THE
ATTORNEY-CLIENT PRIVILEGE BECAUSE THEY WERE MADE
<u>IN FURTHERANCE OF A CRIME OR FRAUD</u>**

The importance of the attorney-client privilege is well-established. <u>See, e.g.</u> <u>Upjohn</u>

<u>v. United States</u>, 449 U.S. 383, 389 (1981). "Yet, the privilege is not worthy of protection

'at all costs.'" <u>In re Grand Jury Subpoenas v. United States</u>, 144 F.3d 653, 659-60 (10th

Cir. 1998). It is also well-established that the privilege does not apply "where the client

consults an attorney to further a crime or fraud." <u>Id.</u> at 660 (internal citation and quotation

marks omitted). "It is the purpose of the crime-fraud exception to the attorney-client

privilege to assure that the seal of secrecy, between the lawyer and client does not extend

to communications made for the purpose of getting advice for the commission of a fraud or crime." Id. (internal citation and quotation marks omitted).

The party invoking the crime-fraud exception must make a prima facie showing that the attorney participation in the crime or fraud has "some foundation in fact." Id. The prima facie showing is satisfied where there is evidence that "the client was engaged in or was planning the criminal or fraudulent conduct when it sought the assistance of counsel and that the assistance was obtained in furtherance of the conduct or was closely related to it." Id. Even when the client is disclosing past wrongdoing, the crime-fraud exception applies if the client seeks assistance "to cover up and perpetuate the crime or fraud." Id.

Here, German has made a prima facie showing that the crime-fraud exception applies. It is a crime for a public officer to "willfully disobey[] any provisions of law regulating his official conduct." 21 O.S. § 343. Furthermore, it is a crime to knowingly make or utter a materially false statement in the course of an internal state agency investigation. 21 O.S. § 281(A). It is also a crime for two or more persons to conspire to falsely and maliciously procure the prosecution or arrest of another for any crime. 21 O.S. § 421.

German has made a prima facie showing that Rhoades, Harrell, and Orr committed each of these criminal acts. Rhoades, Harrell, and Orr cheated on the Troop A and Troop R promotional examinations in July 2018. See Doc. 65-7 at 4:2-25; Doc. 65-8 (test questions); Doc. 88-3 at 25:18-26:18; 28:10-29:8; 29:9-31:6; and 31:21-32:7; Doc. 89-1. Despite this, they each denied cheating during the Troop Z investigation. See Doc. 88-1 (statement of Rhoades); Doc. 65-14 (statement of Orr); Exhibit 2, Statement of Harrell.

They also conspired to falsely accuse German of blackmail. Rhoades falsely accused German of seeking a promotion or aid in obtaining an appointment in exchange for not releasing information about the cheating scandal. See Doc. 88-1 (Rhoades' false allegation); Doc. 88-2 at 11:15-20, 27:7-13, and 31:7-32:2 (German's denials). Then, all three of them denied cheating to Troop Z as a way to bolster the believability of Rhoades' outlandish story.

Given this evidence, German has satisfied his burden of showing that the crime-fraud exception applies. The attorney-client privilege cannot be used to shield communications that are made in furtherance of a crime. Accordingly, any objection based on privilege to the communications relating to (1) the cheating scheme; or (2) the allegation of blackmail should be overruled.

## PROPOSITION II

### THE COMMUNICATIONS AT ISSUE ARE NOT PROTECTED BY THE ATTORNEY CLIENT PRIVILEGE BECAUSE THEY WERE NEVER INTENDED TO REMAIN CONFIDENTIAL AND THE DEFENDANTS HAVE VOLUNTARILY DISCLOSED THE COMMUNICATIONS

Even though the crime-fraud exception prevents the defendants from invoking the attorney-client privilege in this case, the Court may also grant this motion on other grounds. Specifically, the defendants have not met their burden of establishing that the communications at issue—any communications between Rhoades/Harrell/Orr and Simpson relating to (1) the cheating scheme; or (2) the allegation of blackmail—are protected by the attorney-client privilege in the first instance.

Federal Rule of Evidence 501 provides that privileges in federal-question cases generally are "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." "The Supreme Court has cautioned that '[t]estimonial exclusionary rules and privileges contravene the fundamental principle that the public . . . has a right to every man's evidence.'" In re Qwest Commc'ns Intern. Inc., 450 F.3d 1179, 1184 (10th Cir. 2006) (citing Trammel v. United States, 445 U.S. 40, 50 (1980)). "The Court further has cautioned that such rules and privileges 'must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" Id.

The party asserting the privilege bears the burden of establishing that the privilege applies. Lewis v. UNUM Corp. Severance Plan, 203 F.R.D. 615, 618 (D. Kan. 2001). "Under the common law, a critical component of the privilege is whether the communication between the client and the attorney is made in confidence of the relationship and under circumstances from which it may reasonably be assumed that the communication will remain in confidence." In re Qwest, 450 F.3d at 1185. Furthermore, continued confidentiality is key to the privilege, and voluntary disclosure by the client "is inconsistent with the attorney-client relationship and waives the privilege." Id.

Here, the communications were not made under circumstances from which it may reasonably be assumed that the communication will remain in confidence. Ostensibly, Rhoads was reporting to Simpson that German blackmailed him for the purpose of

6

initiating a criminal investigation. It is obvious under these circumstances that the communications would not remain confidential. Indeed, when an attorney acts as an investigator, the privilege does not apply. See, e.g. Church Mut. Ins. Co. v. Coutu, CIV-17-209 (D. Colo. May 25, 2018). Simpson was merely acting as an investigator here. The defendants therefore cannot establish the applicability of the privilege.

Furthermore, the defendants are attempting to use the privilege as a sword and a shield. This is improper. Seneca Ins. Co. v. W. Claims, Inc., 774 F.3d 1272, 1277 (10th Cir. 2014) (holding that privilege cannot be asserted when it will "violate the well-established principle that 'attorney-client communications cannot be used both as a sword and a shield.'"). For example, the defendants have directly revealed the substance of some of these conversations in pleadings filed in this action, see Doc. 14 at p. 14, ¶ 76, and in their own lawsuit filed against Gov. Kevin Stitt and others. See Exhibit 3, Excerpts from Rhoades v. Stitt. Even beyond the communications they have directly revealed, their defenses in this case and their claims in their own lawsuit put these conversations directly at issue. For example, the defendants have asserted in this action that Simpson "firewalled" Rhoades and Harrell so that the Troop Z criminal investigation would be "fair." See, e.g. Doc. 64 at 21, ¶ 24 (relying on Rhoades' deposition testimony). Their internal communications are thus squarely at issue.

The defendants should not be allowed to selectively reveal conversations that they believe are advantageous to them, while at the same time hiding the remainder of the conversations from German. As the Tenth Circuit has held, the rule that a party may not use the privilege as a sword and a shield is well established.

7

The defendants have not met their burden to establish the applicability of the privilege in this case. German requests that the Court enter an Order compelling the defendants to reveal the substance of their communications with Megan Simpson relating to (1) the cheating scheme; or (2) the allegation of blackmail.

**PROPOSITION III**

**THE COURT SHOULD GRANT GERMAN LEAVE TO CONDUCT A SECOND
DEPOSITION OF RHOADES FOR THE PURPOSE OF EXPLORING HIS
COMMUNICATIONS WITH SIMPSON RELATING TO THE CHEATING
SCHEME AND THE ALLEGATION OF BLACKMAIL**

If the Court grants German's Motion above, then German requests leave to conduct a second deposition of Rhoades for the purpose of inquiring into his communications with Megan Simpson relating to (1) the cheating scheme; or (2) the allegation of blackmail. There is good cause to authorize a second deposition because Rhoades refused to answer questions about these subjects during his deposition.

**WHEREFORE** Plaintiff Troy D. German respectfully requests that the Court grant this Motion in all respects.

Dated this <u>11th</u> day of March, 2021.

/s/Barrett T. Bowers
Barrett T. Bowers, OBA#30493
The Bowers Law Firm
P.O. Box 891628
Oklahoma City, OK 73189
(405) 727-7188 - T
**barrett@bowerslawok.com**

-and-

Ward & Glass, LLP
1601 36th Ave. NW, Ste. 100

8

Norman, OK 73072<br>
(405) 360-9700 - T<br>
(405) 360-7902 - F<br>
<b>woody@wardglasslaw.com</b><br>
<b>rstermer@wardglasslaw.com</b>

<b><u>CERTIFICATE OF SERVICE</u></b>

I certify that on the <u>11th</u> day of March, 2021, I served a true and correct copy of the above and foregoing on the following counsel of record:

Gentler F. Drummond
Garry M. Gaskins, II
Logan L. James
DRUMMOND LAW, PLLC
1500 South Utica Avenue, Suite 400
Tulsa, Oklahoma 74104-6522
**ATTORNEYS FOR DEFENDANTS**
**RHOADES, HARRELL, AND SIMPSON**

-and-

S. Alex Yaffe
Andrew M. Casey
Foshee and Yaffe
PO Box 890420
Oklahoma City, Oklahoma 73189
**ATTORNEYS FOR DEFENDANT ORR**

/s/Barrett T. Bowers<br>
Barrett T. Bowers