## D. BLACKMAIL BY TROY GERMAN AND SUBSEQUENT INVESTIGATION

56. In August and September 2018, prior to the election of Defendant Stitt as Governor of the State of Oklahoma, Captain Troy German of OHP attempted to blackmail Plaintiff Rhoades in an attempt to be promoted.

57. As part of his effort to blackmail Plaintiff Rhoades, Captain German asserted on multiple occasions, directly to Plaintiff Rhoades, that he would reveal falsified assertions of tampering with the OHP promotional process, including allegations that Plaintiff Harrell had shared test questions with Brian Orr, an OHP trooper being considered for promotion and who spent years as the primary on-field and game day bodyguard for University of Oklahoma football coach Bob Stoops, giving him some level of recognition among the general population.

58. German made the blackmail threats to Plaintiff Rhoades on August 21, 2018, in Rhoades' office, again on September 11, 2018, at Charleston's restaurant in North Oklahoma City, and again on September 28, 2018, at Starbuck's located near Tinker Air Force Base.

59. On September 28, 2018, at a meeting at Starbuck's, German for the third time told Plaintiff Rhoades that German had allegedly "damaging information," and that he wanted Plaintiff Rhoades to help him get promoted.

60. At the Starbuck's meeting, German physically produced a piece of paper to Plaintiff Rhoades, upon which he listed a number of directives that he demanded Plaintiff Rhoades perform.

61. As part of his blackmail demands, German wanted Plaintiff Rhoades to promote two new majors, and to open the positions, schedule and hold testing, and complete the promotions of German and at least one other associate or colleague of German. Plaintiff Rhoades

11

told German in response that he was not going to create two positions that OHP did not have available, or need, and returned the note to German.

62. On November 13, 2018, Plaintiff Rhoades reported the blackmail attempt to Plaintiff Simpson.

63. On the same date, Plaintiff Simpson began an inquiry into the report, by interviewing Plaintiff Rhoades, interviewing Brian Orr, interviewing Plaintiff Harrell, and providing electronic information to Matt Gottschalk of Troop Z, for purposes of opening an investigation.

64. On November 20, 2018, Troop Z formally began an investigation into the blackmail allegation against German. Plaintiff Rhoades instructed Captain Jason Holt of Troop Z to report directly to Simpson regarding the investigation, as she was General Counsel. As General Counsel, Plaintiff Simpson instructed Captain Jason Holt of Troop Z to not reveal any information about the investigation to Rhoades or Harrell to protect the integrity of the investigation, and to investigate not only the blackmail allegation, but any indication of wrongdoing on the part of any person within OHP or DPS, related to the promotional process, to include German, Orr, Plaintiff Rhoades, and Plaintiff Harrell. As part of his charge, he was instructed to, and given freedom to, investigate any lead of wrongdoing or criminal activity to its conclusion, as an effort to identify and discipline any corrupt element within the OHP.

65. Troop Z of the Oklahoma Highway Patrol is the internal criminal investigation unit of OHP and DPS, and it opened its criminal investigation pursuant to 47 O.S. §2-117.

66. As a feature of Troop Z's investigation into the allegations of blackmail by Trooper German against Plaintiff Rhoades, Troop Z did exclude Plaintiffs Rhoades and Harrell from any

involvement or oversight of the investigation in order to ensure a thorough, fair investigation, free of influence by administrators over OHP or DPS.

67. On or about December 17, 2018, Trooper Troy German met with Trooper Michael Wallace of Troop Z as part of the Troop Z investigation. During that interview, German *admitted* that on multiple occasions he met with Plaintiff Rhoades, submitted a list of demands to Plaintiff Rhoades, and threatened to contact "the Oklahoma State Bureau of Investigation (OSBI), the OHP Command Staff, the House and Senate of Oklahoma, the media, and anyone who could 'help effect change'" if Rhoades did not meet his demands and do so on a timeline that German demanded.

68. On or about December 17, 2018, prior to meeting with Trooper Wallace, German called his supervising officer, Major Jack McCoy, who informed German that he had called German to the DPS campus that day to serve German with a notice that he was being placed on administrative leave with pay, pending the investigation.

69. After speaking with McCoy, German traveled from the DPS campus in his assigned OHP unit to the home of Captain Tim Tipton. There, German asked Captain Tipton to keep and hide German's personal cell phone before German returned to the DPS campus to be interviewed by Trooper Wallace.

70. On December 17, 2018, Captain Tim Tipton of OHP did keep and hide German's personal cell phone in what is believed an effort to hide evidence and interfere with an investigation into the actions of Troy German by Troop Z.

71. Based upon Troop Z tracking of German's OHP unit to the home of Captain Tim Tipton, Troop Z obtained a search warrant to search Tipton's home to search for German's phone.

13

72. Prior to executing the warrant, Captain Holt of Troop Z advised Tipton that a warrant was forthcoming and he should come to DPS campus voluntarily and bring the phone, which he did.

73. The same day, Captain Holt interviewed Tipton about his involvement in the effort to blackmail commissioner Rhoades and interfere with the OHP promotional process.

74. During the interview of Tipton, Captain Holt gained additional information about further criminal and administrative violations, and Captain Tipton was also placed on administrative leave because of that information and his efforts to interfere with the investigation by hiding German's personal phone.

75. In addition, as a result of the Troop Z investigation, Trooper Holt reported to Plaintiff Simpson that Major Jack McCoy as well as Captain Tim Tipton were involved in activities that violated OHP/DPS policies, and that they were associated with Captain German's efforts to blackmail Plaintiff Rhoades. As a result of this report, McCoy and Tipton were placed on administrative leave pending further investigation into their activities.

76. On January 18, 2019, Defendant Stitt ordered an independent investigation of the Troop Z investigation, which began a second investigation by the Office of the Oklahoma Attorney General.

77. The Attorney General's investigation resulted in a grand jury proceeding into the actions of Troy German.

78. On February 15, 2019, as a result of the Troop Z investigation and grand jury probe, the grand jury returned an indictment against Captain German, ultimately charging him with one count of blackmail.

14

79. On or about the same date Captain German was indicted, the Oklahoma Attorney General's Office asked DPS/OHP administrators to place any further administrative actions on hold during the pendency of the German criminal matter, with which DPS/OHP administrators complied.

80. On June 28, 2019, the Attorney General's Office dismissed the blackmail case against German, despite his *admission* he attempted to blackmail Plaintiff Rhoades, and the matter was dismissed without the request of or approval by any of the Plaintiffs, who served as the head of the agency and the OHP.

81. At the time the Attorney General's Office dismissed the criminal case against German, the Plaintiffs resumed their review of the Troop Z investigation and further investigation of the additional matters discovered which involved both Major Jack McCoy and Captain Tim Tipton, as well as other individuals involved in violations of law and policy. This investigation included members of the patrol in command staff of the OHP.

### E. EXPOSURE OF CORRUPTION WITHIN OHP AND DPS

82. Following his election to the position of Governor, Defendant Stitt selected Defendant Keating to be the Secretary of Public Safety, a volunteer advisory position that has no statutory authority.

83. In January 2019, Defendant Stitt re-appointed Plaintiff Rhodes into the position of Commissioner of DPS, but withheld the appointment from Senate confirmation proceedings pending external review of the Troop Z investigation.

84. On February 15, 2019, a grand jury indicted Troy German for a single count of blackmail. This matter was filed in Oklahoma County District Court, Case No.: CF-2019-713.

15

85. Upon completion of the grand jury probe, and after the grand jury indicted Captain German, Defendant Stitt announced the re-appointment of Plaintiff Rhoades into the position of Commissioner of DPS, on or about February 22, 2019.

86. The re-appointment of Plaintiff Rhoades into the position of Commissioner of DPS on or about February 22, 2019, indicates that as of that date, Defendant Stitt did not have concerns related to the leadership of the agency, any delays with REAL ID, or any of the Plaintiffs working in the positions they held at the time.

87. As of February 22, 2019, Defendant Stitt, or anyone from his office or staff, did not at any time, express any concerns to any of the Plaintiffs about the leadership of DPS or OHP, or of any concerns he had associated with management of efforts to comply with the REAL ID Act.

88. At the time Defendant Stitt reappointed Plaintiff Rhoades, Defendant Stitt stated "I chose Commissioner Rhoades for his passion and commitment to the safety and protection of the people of Oklahoma. His years of experience with the Oklahoma Highway Patrol and the Department of Public Safety allow him to be a strong and effective leader."

89. On March 6, 2019, the criminal charges against Captain Troy German were refiled under Oklahoma District Court Case No.: CF-2019-967.

90. On or about June 21, 2019, Plaintiff Rhoades was in Atoka, Oklahoma at a Regional Field Meeting and Fish Fry. While there, he was called by Defendant Keating, who informed Rhoades he had just met with Oklahoma City Attorney Gary James and the General Counsel for the Governor regarding the Troy German matter. He then demanded to meet with Plaintiff Simpson and go through the ongoing investigative file, which he had no authority to do.

91. Seven days later, on June 28, 2019, without request of or approval by Plaintiffs, including the victim of the blackmail attempt, Plaintiff Rhoades, as the administration of OHP and DPS, the criminal charges against Captain Troy German were dismissed, and prosecutors represented to the court that the dismissal was "at the request of the State."

92. At no time did Plaintiff Rhoades, or Plaintiffs Simpson or Harrell, ever express to any prosecutor, or any officer or staff member of the Oklahoma Attorney General's Office or the Governor's Office that they no longer desired to prosecute the criminal charges against Captain Troy German.

93. On or about June 28, 2019, the Oklahoma Attorney General's Office released a statement to the media in which it indicated that charges had been dismissed against Captain Troy German "at the request of the Oklahoma Highway Patrol," and that "the OHP determined that [dismissal of charges against German] was in the best interests of the agency."

94. Plaintiffs deny OHP or DPS ever requested dismissal of charges against Captain German, and that the statement issued by the Attorney General's Office suggesting otherwise was not accurate or vetted with DPS/OHP administration.

95. As noted above, following the dismissal of charges against Captain German, and the conclusion of the criminal matter against him, Plaintiff Simpson instructed Trooper Holt to continue his investigation into other violations of policy and/or law that had been identified in the Troop Z investigation that began with the report of blackmail by Captain German.

96. Thereafter, on August 17, 2019, Defendant Keating emailed employees and officials of DPS and demanded, without any authority to do so, that Plaintiffs cease their activities required by Oklahoma law, and take no further action in support of their statutory duties under

17

Oklahoma law, commanding them to immediately stop *any investigation into corruption and unlawful behavior* by Troopers inside the Oklahoma Highway Patrol. See 47 O.S. §2-117.

97. There is no provision in the statutes of Oklahoma or any policy or procedure that allows a cabinet secretary, or any person without authority, to intervene in, or access any, investigation of a Trooper, the Oklahoma Highway Patrol, or any function of Troop Z, the investigative arm of the Department of Public Safety.

98. Eleven days after the email from Defendant Keating, on Wednesday, August 28, 2019, Plaintiff Simpson terminated Joe Claro as Deputy General Counsel of DPS, in part due to his involvement in mismanagement and/or covering up mismanagement of the civil asset forfeiture program, described above.

99. On Thursday, August 29, 2019, during a meeting with DPS Human Resources Representative Stephanie Dodd, Defendant Claro made the comments "I'll be back," "What goes around comes around," and "There are other unapproved terminations the governor doesn't know about." Claro made these comments in the presence of OHP Trooper Michael Patnode.

100. The next day, August 30, 2019, for the first time, Defendant Keating accused Plaintiffs and DPS of not meeting benchmarks for REAL ID.

101. Plaintiffs assert that this concern over any alleged failure to meet the benchmarks for REAL ID is pretextual for the actual unlawful reasons for their termination which happened three days later, on a federal and state holiday so as to avoid media scrutiny and opportunity for Plaintiffs to respond to the allegations.

102. Plaintiffs assert that upon his termination on August 28, 2019, Defendant Claro immediately advanced false reports to Defendant Keating and/or Defendant Stitt, whether

directly or through intermediaries, including Defendant Nelson, to suggest the REAL ID program was not meeting its benchmarks, and that Defendants were also motivated in the termination of Plaintiffs by the desire to interfere with and/or end investigations into the Oklahoma Highway Patrol that were advanced by Plaintiffs and ongoing by Troop Z, consistent with 47 O.S. §2-117.

### F. TERMINATION OF PLAINTIFFS

103. On September 2, 2019, Deputy Cabinet Secretary for Public Safety Jason Nelson contacted Defendants Rhoades, Simpson, and Harrell by telephone and immediately told them the telephone call was being recorded.

104. During the September 2, 2019 phone calls from Defendant Nelson, he informed each Plaintiff that their credentials to both enter any DPS facility and to access the DPS computer system had already been terminated prior to these calls.

105. The indication that Plaintiffs' credentials had been terminated indicates Plaintiffs had already been involuntarily terminated prior to the September 2, 2019 telephone call from Defendant Nelson.

106. During his telephone call to the Plaintiffs, Defendant Nelson informed Plaintiffs Rhoades and Harrell that they would no longer be employed by DPS and/or the State of Oklahoma. Nelson informed Plaintiff Simpson that she had a choice to resign or be terminated, and if no decision was made by 5pm, she would be terminated.

107. At approximately 5pm on September 2, 2019, Jason Nelson sent a text message to Defendant Simpson and informed her that she had been terminated.

160. Plaintiff Harrell seeks damages pursuant to this cause of action in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code.

## V. FIFTH CAUSE OF ACTION – 51 O.S. §151, et seq. – GTCA
## (Wrongful Termination)

Plaintiffs adopt and incorporate paragraphs 1-160 above, as if fully set forth herein, and in further support of their Fifth Cause of Action offer the following:

161. The Fifth Cause of Action is on behalf of all Plaintiffs and is presented against the State of Oklahoma ex rel the Office of the Governor of the State of Oklahoma and Kevin Stitt in his capacity as Governor of Oklahoma.

162. The terminations and/or forced discharge of Plaintiffs was in violation of Oklahoma public policy, specifically in retaliation for Plaintiffs actions consistent with the laws of Oklahoma and Plaintiffs' efforts to effectuate the police power and required investigative and disciplinary functions of the Commissioner of the Department of Public Safety and his administrative officials as set forth under 47 O.S. §2-117 and the criminal statutes of the State of Oklahoma.

163. Defendants' actions in wrongfully terminating Plaintiffs were the actual and proximate cause of damages they suffered, to which they are entitled to recover.

164. Plaintiffs each are entitled to recover actual and compensatory damages, including but not limited to lost wages, future lost wages, lost benefits, future lost benefits, retirement and pension benefits, and any other actual and/or compensatory damages allowed under the laws of the State of Oklahoma.

165. Plaintiffs seek damages pursuant to this cause of action in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code.

## VI. SIXTH CAUSE OF ACTION – Tortious Interference with Employment Relationship

Plaintiffs adopt and incorporate paragraphs 1-165 above, as if fully set forth herein, and in further support of their Sixth Cause of Action offer the following:

166. The Sixth Cause of Action is on behalf of all Plaintiffs and is presented against Defendants Keating, Nelson, and Claro, in their individual capacity.

167. Defendants Keating, Nelson, and Claro have, and at no time had, any authority within the course and scope of their employment to interfere with the employment of Plaintiffs and had an affirmative duty not to do so.

168. The actions of the Defendants Keating, Nelson, and Claro, constitute an intentional interference with the employment relationship of the Plaintiffs with their employer.

169. The actions of the Defendants Keating, Nelson, and Claro, were the actual and proximate cause of damages suffered by the Plaintiffs, which the Plaintiffs are entitled to recover.

170. Plaintiffs each are entitled to recover actual and compensatory damages, including but not limited to lost wages, future lost wages, lost benefits, future lost benefits, retirement and pension benefits, and any other actual and/or compensatory damages allowed under the laws of the State of Oklahoma.

171. Plaintiffs are entitled to recover punitive damages against Defendants Keating, Nelson, and Claro.

172. Plaintiffs seek damages pursuant to this cause of action in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray this honorable court enter an order in their favor, together with awards for actual damages, compensatory damages, and punitive damages as plead above, a reasonable attorney fee, and further relief available to the Plaintiffs the court deems appropriate.

RESPECTFULLY SUBMITTED THIS 2nd DAY OF JULY, 2020.

HOPSON LEGAL LLC

Dustin J. Hopson, OBA #19485
Hopson Legal LLC
512 NW 12th Street
Oklahoma City, OK 73103
Telephone: (405) 232-6357
Email: dustin@hopsonlawfirm.com
Attorney for Plaintiffs

## VERIFICATION

STATE OF OKLAHOMA            )
                             )
COUNTY OF OKLAHOMA           )

I, Billy D. "Rusty" Rhoades, of lawful age, being first duly sworn on my oath, deposes and says that I have read the above and foregoing Petition, and that all of the matters and facts therein set out are true and correct, to the best of my knowledge.

Further affiant saith not.

_____
Billy D. "Rusty" Rhoades

Subscribed and sworn to before me this 1st day of ~~June~~ July, 2020, by Billy D. "Rusty" Rhoades.

(SEAL) SHELLY MARTIN NOTARY #11000727 EXP. 01/24/23 PUBLIC STATE OF OKLAHOMA

_____
Notary Public

My Commission Expires:

1-24-23

## VERIFICATION

STATE OF OKLAHOMA )
)
COUNTY OF GARFIELD )

I, Megan L. Simpson, of lawful age, being first duly sworn on my oath, deposes and says that I have read the above and foregoing Petition, and that all of the matters and facts therein set out are true and correct, to the best of my knowledge.

Further affiant saith not.

_____
Megan L. Simpson

Subscribed and sworn to before me this 9 day of ~~June~~ July, 2020, by Megan L. Simpson.



_____
Notary Public

My Commission Expires:

May 15, 2021

## VERIFICATION

STATE OF OKLAHOMA )
)
COUNTY OF Sequoyah )

I, Michael S. Harrell, of lawful age, being first duly sworn on my oath, deposes and says that I have read the above and foregoing Petition, and that all of the matters and facts therein set out are true and correct, to the best of my knowledge.

Further affiant saith not.

07-01-2020

_Michael S. Harrell_

Michael S. Harrell

cr Subscribed and sworn to before me this 1st day of ~~June~~ July, 2020, by Michael S. Harrell.

(SEAL)

CONNIE J. RIDDLE
Notary Public
State of Oklahoma
Commission # 01015644

_Connie Riddle_

Notary Public

My Commission Expires:

09-11-2021