IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TROY D. GERMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-19-751-F |
| ) | |
| BILLY D. "RUSTY" RHOADES, individually;) | |
| MICHAEL HARRELL, individually; ) | |
| BRIAN ORR, individually; and ) | |
| MEGAN SIMPSON, individually, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS BILLY D. "RUSTY" RHOADES'S, MICHAEL HARRELL'S, AND MEGAN L. SIMPSON'S RESPONSE AND OBJECTION TO MOTION FOR PROTECTIVE ORDER OR ORDER QUASHING OR MODIFYING SUBPOENA WITH BRIEF IN SUPPORT BY NONPARTY DANE TOWERY**

Defendants, Billy D. "Rusty" Rhoades, Michael Harrell, and Megan L. Simpson (all cumulatively the "RHS Defendants"), by and through their attorneys of record, **DRUMMOND LAW, PLLC**, hereby respectfully submit their Response and Objection to *Motion for Protective Order or for Order Quashing of Modifying Subpoena with Brief in Support by Nonparty Dane Towery*, dkt. 125 (the "Motion"). In response thereto, the RHS Defendants state as follows:

### I.  INTRODUCTION

As a preliminary matter, it is not clear why the Motion filed by Dane Towery ("Towery") was filed under seal. It does not identify any evidence or matters occurring before the Multicounty Grand Jury. In fact, a strict reading of 22 O.S. § 355(A) would preclude Towery from even disclosing these types of matters in a motion filed under seal

1

with this Court without first seeking permission from the judge overseeing the Multicounty Grand Jury.

Regardless, the RHS Defendants narrowly tailored their proposed topics for Towery's deposition to avoid any questions regarding what actually happened before the Multicounty Grand Jury. Further, Towery is not entitled to assert a work product objection because the State of Oklahoma and Towery are not parties to this litigation. Even if he could assert a work product objection, the RHS Defendants are only seeking factual information from Towery, which is not protected by work product. Moreover, the RHS Defendants have a substantial need to obtain this information from Towery, and they have no alternative means of obtaining this information. Accordingly, Towery's Motion should be overruled and denied, and Towery should be compelled to attend a deposition.

## II.   RELEVANT FACTS

1. After multiple communications with Towery and his legal counsel regarding finding a mutually agreeable date for Towery's deposition, the RHS Defendants served Towery a subpoena by agreement via e-mail on July 27, 2021. In this e-mail, the RHS Defendants stated that their questions to Towery would be limited to the following topics:

> (a) the settlement between the State and Troy German resolving his criminal case, including the negotiation of the settlement; (b) the evidence Mr. Towery considered prior to independently signing and filing the Information charging Mr. German with the crime of blackmail (i.e., the evidence Mr. Towery personally considered without confirming or denying whether the same evidence was submitted to the Multicounty Grand Jury); (c) the scope of the charges against Mr. German (i.e., whether Mr. German was only charged with blackmail related to seeking a personal promotion or whether other demands such as firing Mike Harrell and/or adding additional major positions were part of the blackmail charges Mr. Towery filed against Mr. German); (d) communications with Mr. German's counsel; (e) communications with David Prater regarding the Troy German case; (f) the

2

evidence the State intended to present at Troy German's Preliminary Hearing; and
(g) possible objections to David Prater testifying at the Preliminary Hearing.

E-mail from Garry M. Gaskins to Devan Pederson and Dane Towery, a copy attached hereto as Exhibit "1."

2. On August 6, 2021, Towery's counsel e-mailed the RHS Defendants' counsel claiming that the deposition would, among other things, require Towery to disclose information submitted before the Multicounty Grand Jury. In response, the RHS Defendants' counsel stated:

> Mr. Towery signed an Information as an officer of the court that he personally believed a crime was committed. This was after the Multicounty Grand Jury Indictment was dismissed. Mr. Towery may have considered something presented to the Multicounty Grand Jury in making that conclusion. However, I don't see how 22 O.S. § 355(A) is implicated unless he were to admit that the same evidence was presented to the Multicounty Grand Jury. I do not expect Mr. Towery to answer questions regarding what was presented to the Grand Jury.

E-mail correspondence between Garry M. Gaskins and Devan Pederson on August 6, 2021, a copy attached hereto as Exhibit "2."

3. After the Indictment issued by the Multicounty Grand Jury against Plaintiff Troy D. German ("German") was dismissed, Towery signed and filed an Information on March 6, 2019 charging German with the crime of blackmail. On the second page of the Information, Towery stated under oath: "I do solemnly swear that the statements and allegations set forth in the within information are true and correct to the best of my information and belief." A copy of the Information is attached hereto as Exhibit "3."

### III.   ARGUMENTS AND AUTHORITIES

**A.   The RHS Defendants Do Not Intend to Ask Towery to Disclose Matters Occurring Before the Multicounty Grand Jury.**

Section 355(A) of Oklahoma Title 22 only precludes Towery from "dislos[ing] matters occurring before the multicounty grand jury." The RHS Defendants have reiterated

3

to Towery's counsel multiple times that they have no intention of asking Towery to disclose what occurred in the room where the Multicounty Grand Jury met. The RHS Defendants narrowly tailored their proposed topics to Towery to avoid any such discussion. Topics: "(a) the settlement between the State and Troy German resolving his criminal case, including the negotiation of the settlement," "(e) communications with David Prater regarding the Troy German case; (f) the evidence the State intended to present at Troy German's Preliminary Hearing; and (g) possible objections to David Prater testifying at the Preliminary Hearing" obviously have nothing to do with the Multicounty Grand Jury. As a result, Towery can clearly testify about these matters without implicating 22 O.S. § 355(A).

Topic (b) likewise was narrowly tailored to avoid any discussion of what occurred in front of the Multicounty Grand Jury. In his Motion, Towery fails to accurately quote the entirety of this topic. Specifically, in topic (b), the RHS Defendants stated that they wanted to examine Towery about "the evidence Mr. Towery considered prior to independently signing and filing the Information charging Mr. German with the crime of blackmail (i.e., the evidence Mr. Towery personally considered **without confirming or denying whether the same evidence was submitted to the Multicounty Grand Jury**)." Ex. 1 (emphasis added). The bolded and underlined portion was not directly quoted in Towery's Motion. This additional language is dispositive on this issue. The RHS Defendants made clear that they do not intend to ask Towery whether any evidence was submitted to the Multicounty Grand Jury. Outside of the Multicounty Grand Jury, Towery personally signed an Information as an officer of the court and under penalty of perjury

4

that there was probable cause to believe that German committed the crime of blackmail. Ex. 3. Towery can certainly discuss the evidence he personally relied on in making these representations under oath to the court without discussing what actually occurred before the Multicounty Grand Jury.

In his Motion, Towery states that "[i]t requires no great leap to surmise the source of Mr. Towery's knowledge." It is fair to conclude that Towery likely relied primarily on evidence also submitted to the Multicounty Grand Jury in reaching his conclusion. Nevertheless, Section 335(A) of Oklahoma Title 22 only precludes Towery from disclosing what happened in front of the Multicounty Grand Jury. Towery would only be disclosing what happened in front of the Multicounty Grand Jury if he expressly confirmed or denied whether the same evidence was submitted to the Multicounty Grand Jury. As shown above, the RHS Defendants have no intention of asking Towery to confirm or deny whether evidence was also submitted to the Multicounty Grand Jury.

Further, just because it is likely evidence was submitted to a Multicounty Grand Jury, this does not preclude discussion of the evidence in other contexts. For example, when German reached a settlement with the State of Oklahoma resolving his criminal case, the case was set for preliminary hearing. It is likely that evidence Towery intended to submit at the preliminary hearing was also heard by the Multicounty Grand Jury. This same conclusion could also be reached with respect to evidence expected to be submitted at a trial of the criminal case. Towery could certainly discuss this evidence at the preliminary hearing and trial. Therefore, Towery is not precluded from disclosing or discussing evidence just because the same evidence may or may not have been submitted to the

Multicounty Grand Jury. Otherwise, no criminal case that involved a multicounty grand jury could ever be prosecuted. Accordingly, Towery can certainly discuss the evidence supporting the Information he independently verified and filed without implicating 22 O.S. § 355(A).

Next, the topic "(c) the scope of the charges against Mr. German (i.e., whether Mr. German was only charged with blackmail related to seeking a personal promotion or whether other demands such as firing Mike Harrell and/or adding additional major positions were part of the blackmail charges Mr. Towery filed against Mr. German)" does not require disclosure of what occurred before the Multicounty Grand Jury. This topic is focused on the Information separately verified and filed by Towery. The RHS Defendants have no intention of asking Towery any questions regarding the scope of the Indictment issued by the Multicounty Grand Jury. Accordingly, this topic does not implicate 22 O.S. § 355(A).

Finally, the topic "(d) communications with Mr. German's counsel" does not implicate 22 O.S. § 355(A). German's counsel did not testify in front of the Multicounty Grand Jury. Therefore, these communications generally do not involve disclosure of what occurred before the Multicounty Grand Jury.[1]

The only possible communication that is a closer call is whether German's counsel informed Towery that German intended to exercise his Fifth Amendment right against self-incrimination to avoid testifying in front of the Multicounty Grand Jury. However, Towery

---

[1] The RHS Defendants assume Towery did not disclose information before the Multicounty Grand Jury to German's counsel in violation of 22 O.S. § 355(A).

could still testify as to the substance of these communications without disclosing whether this information was communicated to the Multicounty Grand Jury.  Therefore, these communications likewise do not involve disclosure of what occurred before the Multicounty Grand Jury.  Accordingly, 22 O.S. § 355(A) does not preclude Towery's deposition in this matter.

**B.     Towery's Work Product Objection Fails as a Matter of Law.  Even if Towery Were Entitled to Assert This Objection, the RHS Defendants Have a Substantial Need for Towery's Deposition, and His Deposition Is the Only Means of Obtaining This Evidence.**

"[C]ourts within and outside this Circuit have concluded that work product prepared for a non-party under Rule 26(b)(3) does not extend to a subsequent action not involving the non-party." *Arkansas River Power Auth. v. The Babcock & Wilcox Co.*, 310 F.R.D. 492, 498 n. 11 (D. Colo. 2015) (citing *Hawkins v. South Plains Int'l Trucks, Inc.*, 139 F.R.D. 682, 684 (D.Colo.1991); *Tambourine Comercio Internacional SA v. Solowsky*, 312 Fed.Appx. 263, 286 (11th Cir.2009); *Bozeman v. Chartis Cas. Co.*, Case No. 2:10–cv–102–FtM–36SPC, 2010 WL 4386826, *2 (M.D.Fla. Oct. 29, 2010); and *Burton v. R.J. Reynolds Tobacco Co.*, 200 F.R.D. 661, 676 (D.Kan.2001)).

Towery and the State of Oklahoma are not parties to this litigation.  Accordingly, there is no valid work product objection by Towery or the State of Oklahoma.

Regardless, "[t]he party asserting work product privilege has the burden of showing the applicability of the doctrine." *In re Grand Jury Proceedings*, 156 F.3d 1038, 1042 (10th Cir. 1998).  "The courts have consistently held that the work product concept furnishes no shield against discovery, by interrogatories or by deposition, of the facts that

the adverse party's lawyer has learned, or the persons from whom he has learned such facts, or the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery." *Feldman v. Pioneer Petroleum, Inc.*, 87 F.R.D. 86, 89 (W.D. Okla. 1980) (quoting 8 Wright and Miller, Federal Practice and Procedure : Civil s 2023, at 194 (1970) s 2023. "Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product." *Resolution Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995).

Here, the RHS Defendants are simply seeking to discover facts from Towery. The substance of Towery's conversations with German's counsel are certainly facts Towery has learned. Likewise, the facts Towery relied on in verifying the Information and the substance of conversations with David Prater are factual inquiries. Finally, what Towery meant by the phrase "used verbal, written or printed communication with the intent to extort or gain anything of value, specifically promotions or aiding in appointments for himself or others within the Oklahoma Highway Patrol, or to compel Rusty Rhoades to do such acts against his will" is a factual inquiry. Therefore, even if Towery were entitled to assert work product protection, the factual information the RHS Defendants are seeking is not protected.

Furthermore, even if the information the RHS Defendants are seeking were protected, the RHS are still entitled to obtain it pursuant to Fed.R.Civ.P. 26(b)(3)(A)(ii). Pursuant to this subsection, work product is still subject to discovery if "the party shows

8

that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."

Here, there is a substantial need for Towery's deposition and there are no alternative means of obtaining this evidence absent Towery's deposition. First, German has denied that he entered into a settlement resolving his criminal case and has denied that he informed the prosecution of his intent to invoke his Fifth Amendment privilege against self-incrimination to avoid testifying in front of the Multicounty Grand Jury. Towery is the only other party that can confirm or deny these assertions by German.

Second, because access to the Multicounty Grand Jury records is not available, Towery is the only person that can testify as to what he relied on in representing to the court under oath that there was sufficient evidence to support a blackmail charge against German. As previously discussed, Towery can discuss this evidence in the context of his verifying the Information outside of the Multicounty Grand Jury process.

Third, this Court has suggested that there is a dispute as to what benefit German sought supporting the blackmail charge. Order, dkt. 78, p. 5 n. 3. Specifically, the phrase "used verbal, written or printed communication with the intent to extort or gain anything of value, specifically promotions or aiding in appointments for himself or others within the Oklahoma Highway Patrol, or to compel Rusty Rhoades to do such acts against his will" could be read in multiple ways. German argues that he was charged with only seeking a personal appointment, which he has denied. The RHS Defendants allege that the charge against German was inclusive of other demands he has confessed to making such as demanding that Rhoades add additional major positions. Towery is the only person that

9

can resolve this ambiguity because he is the person that wrote the disputed language in the Information.

Finally, German's position in this matter is that David Prater's purported adverse testimony is the true reason the State of Oklahoma dismissed the criminal charges against German as opposed to the settlement. Towery is the only person that can confirm or deny these assertions.

Consequently, there is a substantial need for Towery's deposition, and there are no alternative means for the parties to obtain this evidence. Therefore, even if Towery were entitled to assert work product protection and were able to meet his burden of establishing that his testimony is protected work product, the RHS Defendants are still entitled to obtain this evidence through Towery's deposition.

**C.   There Is No Heightened Standard for Depositions of a Prosecutor. Even if There Were, There Is a Substantial Need for Towery's Deposition.**

In his Motion, Towery does not identify any federal or Oklahoma case law suggesting that depositions of prosecutors are disfavored or subject to a heightened standard in civil litigation. The *State v. Anderson*, 79 S.W.3d 420, 438 (Mo. 2002) (en banc), cited by Towery involved an attempt to take a deposition of the prosecutor in the underlying criminal case. Certainly, there are public policy reasons, which are not applicable in a civil case, precluding a criminal defendant from taking the deposition of the prosecutor while the criminal case is pending. Therefore, it does not appear that this case is relevant to the current dispute.

Further, the alleged heightened standard discussed in the *O'Connell v. Cowan*, 332 S.W.3d 34, 44 (Ky. 2010), reh'g granted, opinion modified (Dec. 16, 2010), and *Messenger v. Ingham County Prosecutor*, 591 N.W.2d 393, 400 (Mich. App. 1998), cases cited by Towery simply arises from the prosecutor's deposition potentially involving work product. However, as previously discussed, there is no work product protection under federal law because Towery and the State of Oklahoma are not parties to this case. Moreover, even if there were work product protection, there is a substantial need for Towery's deposition, and a deposition of Towery is the only means of obtaining this information. Therefore, even if there were a heightened standard for seeking a prosecutor's deposition because of the potential disclosure of protected work product, these limitations are not applicable in this case. Accordingly, Towery's Motion should be denied, and Towery should be compelled to attend his deposition.

## IV.   CONCLUSION

For the foregoing reasons, the RHS Defendants respectfully request that the Court overrule and deny *Motion for Protective Order or for Order Quashing of Modifying Subpoena with Brief in Support by Nonparty Dane Towery*, dkt. 125, and compel Towery to attend a deposition at a mutually agreeable date.

**Respectfully Submitted,**

**By:** s/Garry M. Gaskins, II
Gentner F. Drummond, OBA #16645
Gentner.Drummond@drummond.law
Garry M. Gaskins, II, OBA #20212
Garry.Gaskins@drummond.law
Logan L. James, OBA #32430
Logan.James@drummond.law
DRUMMOND LAW, PLLC
1500 South Utica Avenue, Suite 400
Tulsa, Oklahoma 74104-6522
Telephone: (918) 749-7378
Facsimile: (918)749-7869
*Attorney for Defendants, Billy D. "Rusty" Rhoades, Michael Harrell, and Megan L. Simpson*

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2021, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Stanley M. Ward
Woodrow K. Glass
Barrett T. Bowers
Andrew M. Casey
S. Alex Yaffe
Devan A. Pederson

s/Garry M. Gaskins, II
Garry M. Gaskins, II